MAYBIN, surviving partner, &c., *v.* COULON. (*a*)

COULON *v.* MAYBIN, surviving partner, &c.

*Illegal contract.*

An action cannot be maintained in our courts, founded on a contract between a citizen and an alien, by which the former undertook to purchase vessels and cargoes in his own name, for the latter, and in like manner, to import the return cargoes, in fraud of the registry and revenue laws of the United States. (*b*)

THESE actions having been referred, the referees reported that there was due, in the first, from the defendant to the plaintiff, as surviving partner of Joseph Anthony & Co., a sum of $30,708.16 ; and that in the second, there was no cause of action.   To this report, Coulon filed a number of exceptions, of which it is only necessary to state the substance of the single exception, which was the ground of the decision of the Court : to wit, " That the balance reported to be due to Maybin, arose from a series of unlawful transactions, in violation of the acts of congress, respecting the registering of vessels, and the duties on tonnage and impost ; and consequently, no court of justice could lend its aid to enforce the recovery."

The facts were briefly these : Coulon, an alien, came to the United States in the year 1794, bringing with him a considerable quantity of merchandise, which he placed in the hands of Joseph Anthony & Co.   He had also left a considerable property in the Isle of France ; and he was not only desirous to have that property brought to America, but to enter into various commercial speculations, with these and other funds, in the European, as well as Indian, markets.   He accordingly entered into engagements with Joseph Anthony & Co. ; and in consideration of his making them the depositaries of his funds, with an allowance of ample commissions for services, and of interest for advances, they undertook to purchase vessels and cargoes for him, in their own names ; and in like manner, to import the return cargoes.   Among the vessels purchased for Coulon (some carrying only a *sea-letter) was the America, which was registered in New York, [*299 as the property of Joseph Anthony & Co., American citizens ; and a cargo afterwards brought in the America, from the Isle of France, though entirely owned by Coulon, was entered at the custom-house of Philadelphia, as owned by them.   From the accounts and correspondence produced in court, as well as before the referees, it clearly appeared, that the balance resulted from these illicit transactions ; and that the sum reported to be due to Maybin, was about the amount of the commissions for services, and the interest for occasional advances ; the net price of the vessels and cargoes having been actually paid from the funds of Coulon.

The counsel for *Coulon* insisted, that the referees had erred in point of law, by giving a sanction to the violation of the acts of congress (*c*) ; and

(*a*) s. c. 4 Yeates 24 ; where the case is more fully reported.
(*b*) See also Mitchell *v.* Smith, *ante*, p. 269, and the notes to that case.
(*c*) See the registering act, 1 U. S. Stat. 287 ; and the impost law, Ibid. 135.

Maybin v. Coulon.

that their report could not, therefore, be sustained or affirmed by the court. In the course of the argument they cited, 1 Pow. on Cont. 183, 195, 201, 203 ; 1 Bos. & Pul. 340 ; 3 T. R. 454 ; 4 Ibid. 466 ; 1 Bos. & Pul. 296 ; Cowp. 341 ; 5 T. R. 599 ; 1 Bos. & Pul. 556 ; 4 Burr. 2069 ; 3 T. R. 421 ; 6 Ibid. 61, 405 ; 3 Ves. jr. 373.

The counsel for *Maybin* argued, that advances were made, and services performed, to a great amount, independent of the vessels and cargoes, and were not involved in any illicit imputation ; that it did not appear that the sum reported arose out of an illicit consideration or contract ; that it was too late, after a reference and report, which liquidated the accounts, to object to the legality of the consideration and contract ; and that, even if the general transaction were illicit, still the contract being executed between the vendor and the vendee of the property, the plaintiff, not being the actual vendor, had a right to recover the money paid by Joseph Anthony & Co. to the vendor, at the request, and for the use of the defendant. In support of this last position, the following authorities were cited : 1 Pow. on Cont. 200, 1 ; 4 Burr. 2069 ; 1 W. Bl. 633 ; Cowp. 343 ; 3 T. R. 418–9 ; 6 Ibid. 61 ; 7 Ibid. 14 ; 3 Ves. jr., 612–3 ; 8 T. R. 575, 577.

The cause having been argued, on these general grounds, during several days in December term 1803, and March term 1804, the unanimous opinion of the judges was delivered, upon full consideration, by SHIPPEN, Chief Justice, in substance, as follows :

BY THE COURT.—There is a just debt due from the defendant Coulon, to the plaintiff, Maybin ; and therefore, so far as the court could lawfully act, they would be desirous to affirm the *report of the referees. Hence, we listened, with particular attention and favor, to the attempt of the plaintiff's counsel to distinguish the origin of the sum reported, from the general mass of the illicit transaction. The attempt has not, however, been successful ; so that we must decide the question on the principles of law, which are clearly established by the authorities that have been cited.

The positive provisions of the laws of the United States, respecting American registered vessels ; the national policy of our navigation system ; good faith towards the belligerent powers ; and the very foundations of morality ; have been violated in the course of the transaction, now exhibited to us. The act of the court is necessary to give effect to the report of the referees : but no court of justice of the United States can lend its aid, at any time, or in any degree, to recover a debt originating in a source so forbidden, so foul and so pernicious. The report cannot, therefore, be affirmed. (a)

Report set aside.

*Ingersoll, E. Tilghman* and *Levy*, for Maybin.
*Du Ponceau* and *Dallas*, for Coulon.

---

(a) It appeared, that one of the referees, upon discovering the illicit nature of the transaction, declined proceeding ; but was persuaded to resume the business of the reference, in consequence of an urgent letter from Maybin, appealing particularly to the sympathy and benevolence of the referee. One of Coulon's exceptions to this report, was pointed at this *ex parte* communication ; and the court, in delivering their opinion upon the general question, stated, in strong terms, their disapprobation of one of the parties

---

addressing the referees, by way of confidence or solicitation, pending the reference, though the letter should not contain any remarks on the merits of the controversy.

