GOODWIN, Circuit Judge:
In April 1990 the United States Drag Enforcement Agency (DEA) orchestrated the abduction and torture of Dr. Alvarez-Ma-chain, a Mexican doctor, and transported him to the United States for prosecution for the murder of a DEA agent in Mexico. The criminal case ended when the district court granted a judgment of acquittal.
Alvarez-Machain returned to Mexico and filed this civil action against the United States and its agents under 42 U.S.C. § 1983 and other federal statutes. His elaims included the violation of constitutional rights as well as ten torts, ranging from torture to false imprisonment. Defendants moved to dismiss the complaint, and the district court granted the motion in part and denied it in part.
The court dismissed the constitutional claims that were based upon activities occurring in Mexico. The court also dismissed a claim brought under the Torture Victim Protection Act (TVPA). The court refused to dismiss the tort claims as barred by the statute of limitations, and denied the motion based upon the defense of qualified immunity asserted by defendants accused of wrongful conduct within the United States. We affirm the district court in its judgment with respect to all claims other than the TVPA claim. The district court held that it could not apply the TVPA to defendant’s actions because the TVPA was enacted subsequent to the pertinent events. Because we hold that application of the TVPA to past acts would not have a retroactive effect, we reverse the district court on this ruling.
*-885 FACTS
On April 2, 1990, a team of men alleged to be hired by DEA agents working in Mexico, abducted Dr. Alvarez-Machain from his office in Guadalajara. They blindfolded him, transported him to an unknown location, and proceeded to beat him and subject him to electrical shocks. His kidnappers injected him with unknown chemical substances causing nausea and dizziness, denied him food and water, and forced him to lie face down on the floor for a long period of time. His life was repeatedly threatened, as well as the safety of his family. After enduring this torment for several hours, he was delivered into the hands of the DEA in El Paso, Texas.
Defendant Antonio Garate-Bustamante coordinated and led the activities in Mexico, and defendant Francisco Sosa participated in the events. Both were working as the paid agents of the DEA, who undertook to bring Alvarez-Machain to the United States in order to prosecute him for his alleged role in the murder of DEA agent Enrique Camare-na.
Once in El Paso, defendant Garate-Busta-mante and several DEA agents interrogated Alvarez-Machain. The DEA agents threatened Alvarez-Machain during the interrogation, denied him food and adequate medical attention, and at one point forced him to stand naked and be photographed. In El Paso, the DEA processed Alvarez-Machain under an assumed name or names, despite knowing his true identity, frustrating efforts by his family members and the Mexican government to learn his whereabouts.
On April 10, 1990, Alvarez-Machain was transferred to Los Angeles and arraigned on charges of murder before United States District Judge Edward Rafeedie. Subsequently, Judge Rafeedie dismissed the charges, concluding that the court lacked jurisdiction over Alvarez-Machain because his abduction violated the extradition treaty between the United States and Mexico. United States v. Caro-Quintero, 745 F.Supp. 599, 601 (C.D.Cal.1990), aff'd sub nom United States v. Alvarez-Machain, 946 F.2d 1466 (9th Cir. 1991). The Supreme Court reversed the dismissal, however, and Alvarez-Machain was forced to stand trial. United States v. Alvarez-Machain, 504 U.S. 655, 112 S.Ct. 2188, 119 L.Ed.2d 441 (1992). As noted, the prosecution ended with a judgment of acquittal on Decémber 14, 1992. After the acquittal, Judge Rafeedie revealed that the government had withheld potentially exculpatory evidence from the defense, in addition to failing to take him promptly before a magistrate after he reached United States territory under arrest.
In addition to the cases consolidated in this appeal, Alvarez-Machain filed an administrative claim against the United States under the Federal Tort Claims Act (FTCA), 28 • U.S.C. § 2401(b). He added the United States as a defendant in January, 1994, after the six-month waiting period required by statute had expired. Against all defendants he alleged claims for kidnapping; torture; cruel and inhuman and degrading treatment or punishment; prolonged arbitrary detention; assault and battery; false imprisonment; intentional infliction of emotional distress; false arrest; negligent employment of public employees and agents; negligent infliction of emotional distress; and violations of the Fourth, Fifth and Eighth Amendments to the United States Constitution. Against defendants Garate-Bustamante and Sosa, Alvarez-Machain also alleged a claim under the Torture Victim Protection Act (TVPA).[1]
In dismissing the constitutional claims arising out of conduct in Mexico, the district court held that the United States Constitution does not protect Mexican nationals in Mexico from wrongs committed against them by United States government agents engaged in extraterritorial law enforcement. The district court allowed the action to proceed on conduct by DEA agents acting within the United States, however, holding that the alleged conduct, if proved, clearly violated established constitutional rights. Accordingly, as noted, the DEA agents who participated in the El Paso activities were denied dismissal on qualified immunity grounds, and they have appealed that ruling.
*-884 The court denied Defendants Garate-Bus-tamante’s and Sosa’s motions for dismissal as to all but the TVPA claim, holding that more discovery was necessary to determine the exact relationship between the Mexican defendants and the United States before a determination could be made whether the defense of qualified immunity was available, or whether the United States could be substituted as the defendant on the tort claims based on their conduct in the United States. As for the TVPA, the district court declined to apply it to claims of torture occurring prior to the enactment of the statute, and Alvarez-Machain appeals that ruling.
Finally, with regard to the United States, the district court denied its motion to dismiss the tort claims as barred by the statute of limitations. The court recognized that the statute of limitations raised a potential problem for Alvarez-Machain, but believed more discovery might reveal a basis for equitable tolling of the statute because of the lengthy duration of the plaintiffs incarceration, including his being held incommunicado, and otherwise prevented from timely protecting his civil rights while defending the murder charges against him.
These rulings are the subject of the present interlocutory appeals.[2]
DISCUSSION
1. Statute of Limitations-No. 95-55768
The government argues that Alvarez-Ma-ehain’s FTCA claims are barred by the statute of limitations because he failed to file an administrative claim until July 1993-three years after his alleged abduction and torture.
The FTCA provides:
A tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues....
28 U.S.C. § 2401(b). The key question here is the date of accrual for Alvarez-Machain’s claims.
Generally a claim accrues when the plaintiff knows, or in the exercise of reasonable diligence should know, of both the injury and its cause. Dyniewicz v. United States, 742 F.2d 484, 486 (9th Cir.1984). Under ornease law, all the torts alleged by Alvarez-Machain accrued more than three years before he filed his administrative claim and so normally would be barred.
In this case, however, Alvarez-Ma-chain’s claims of false arrest, false imprisonment, and negligent infliction of emotional distress are not barred by the statute because they did not accrue until after his acquittal in his criminal trial. In Heck v. Humphrey, 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994), the Supreme Court held that those § 1983 claims of state prisoners which implicated the validity of their convictions would not accrue until their conviction was reversed. Here, Alvarez-Machain alleges the torts of false arrest, false imprisonment, and negligent infliction of emotional distress. If these claims had been litigated while his criminal trial was pending, their resolution would have implicated his guilt or innocence on the charges against him. See Smithart v. Towery, 79 F.3d 951, 952 (9th Cir.1996) (“There is no question that Heck bars [the plaintiffs] claims that defendants lacked probable cause to arrest him and brought unfounded criminal charges against him.”). Under the reasoning of Heck, therefore, Alvarez-Machain’s claims for false arrest, false imprisonment, and negligent inflic *-883 tion of emotional distress did not accrue in this case until he was acquitted.
Alvarez-Maehain’s other tort claims do not necessarily implicate the validity of his criminal charges. Nonetheless, this is an appropriate ease for the application of the doctrine of equitable tolling of the statute of limitations. In addition to the obvious reasons for its application to claims that could not have been brought prior to his acquittal, reasons of judicial economy counsel against splitting causes of action, and reasons of common decency counsel against using governmental immunity as a sword instead of a shield in this ease.
Equitable tolling is available in suits against the United States absent evidence that Congress intended the contrary. Irwin v. Dept. of Veterans Affairs, 498 U.S. 89, 95-96, 111 S.Ct. 453, 457-58, 112 L.Ed.2d 435 (1990). Nothing in the FTCA indicates that Congress intended for equitable tolling not to apply. Hence, equitable tolling is available for FTCA claims in the appropriate circumstances; and the circumstances of this case are highly appropriate for tolling.
Federal courts have applied the doctrine of equitable tolling in two generally distinct kinds of situations. In the first, the plaintiffs were prevented from asserting their claims by some kind of wrongful conduct on the part of the defendant. In the second, extraordinary circumstances beyond plaintiffs’ control made it impossible to file the claims on time.
Seattle Audubon Soc. v. Robertson, 931 F.2d 590, 595 (9th Cir.1991), rev. on other grounds, 503 U.S. 429, 112 S.Ct. 1407, 118 L.Ed.2d 73 (1992). See also Capital Tracing, Inc. v. United States, 63 F.3d 859 (9th Cir.1995)(toUing the statute due to a lack of clarity in the law).
Here, the circumstances of Alvarez-Machain’s abduction and subsequent trial warrant the equitable tolling of the statute of limitations. Alvarez-Machain was incarcerated for over two years, facing criminal charges of .the highest gravity in a foreign country whose language he did not understand. His life was at stake, and his case involved numerous, complex issues of first impression-several of which were ultimately decided by the United States Supreme Court. See, e.g., United States v. Alvarez-Machain, 504 U.S. 655, 112 S.Ct. 2188, 119 L.Ed.2d 441 (1992); United States v. Verdugo-Urquidez, 494 U.S. 259, 110 S.Ct. 1056, 108 L.Ed.2d 222 (1990). Moreover, as discussed, had he filed an administrative claim prior to obtaining an acquittal, many of his claims would have been dismissed because they necessarily implicated the validity of his criminal charges. Heck v. Humphrey, 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383. Looking at the totality of these circumstances, we conclude that Alvarez-Machain’s case constitutes that rare situation where equitable tolling is demanded by sound legal principles as well as the interests of justice. We affirm the denial of the government’s motion based on the statute of limitations.
II. DEA Agents Qualified Immunity
Pre-trial detainees possess a clearly established right to be free from punishment. Bell v. Wolfish 441 U.S. 520, 534-37, 99 S.Ct. 1861, 1871-73, 60 L.Ed.2d 447 (1979). This right is located in the due process clause of the Fifth Amendment, but we borrow from Eighth Amendment principles in determining the care to be afforded pre-trial detainees. Jones v. Johnson, 781 F.2d 769, 771 (9th Cir.1986). The Eighth Amendment “proscribes ... sanctions that are ‘so totally without penological justification that it results iii the gratuitous infliction of suffering.’ ” Hoptowit v. Ray, 682 F.2d 1237, 1246 (9th Cir.1982)(quoting Gregg v. Georgia, 428 U.S. 153, 183, 96 S.Ct. 2909, 2929, 49 L.Ed.2d 859 (1976)). Convicted prisoners and pre-trial detainees are also entitled to “adequate food, clothing, shelter, sanitation, medical care, and personal safety.” Id.
The complaint here reveals that the DEA agent defendants “threatened” Alvarez-Machain during an interrogation session in El Paso on April 3, 1990; withheld food throughout the interrogation; incarcerated him under a false name, making it impossible for the United States government to respond to inquiries about his whereabouts from his family or the Mexican government; and denied him adequate medical attention. Each *-882 of these allegations, if proven, served to create an atmosphere of fear and isolation, imposing “gratuitous suffering” in violation of Hoptowit. Further, the deprivation of food and medical attention alone could serve to sustain a claim under the due process clause. Id. Accordingly, the district court did not err in denying defendants’ motion to dismiss these claims.
III. Extraterritorial Application of the Fifth Amendment
Alvarez-Machain argues that the district court erred in holding that the Fifth Amendment due process clause does not protect aliens from actions taken by the United States abroad. We find it unnecessary to reach this issue. The issue is precluded because, under the instruction of the Supreme Court, in his criminal prosecution, we have already held that the actions taken by United States government agents or their employees against Alvarez-Machain in Mexico did not violate due process. United States v. Alvarez-Machain, 971 F.2d 310 (9th Cir.1992) (on remand from the United States Supreme Court). There we stated, “Alvarez-Ma-chain’s main alternative argument is that the circumstances of his kidnapping were so shocking that the abduction constituted a denial of due process. This contention similarly is not supported by the district court’s findings.” Id. at 311. This adverse finding in the criminal action bars Alvarez-Machain from pressing the issue again in the civil arena. Matthews v. Macanas, 990 F.2d 467 (9th Cir.1993).
IV. Torture Victim, Protection Act
Alvarez-Maehain’s complaint also included a claim against defendants Garate-Busta-mante and Sosa under the Torture Victim Protection Act, signed into law on March 12, 1992. The law provides in pertinent part: “An individual who, under actual or apparent authority, or color of law, of any foreign nation — (1) subjects an individual to torture shall, in a civil action, be hable for damages to that individual;_” TVPA § 2(a), codified in the statutory notes to 28 U.S.C. § 1350.
The district court dismissed the TVPA claim, holding that application of the TVPA to the allegations here would have an improper, retroactive effect. Alvarez-Machain argues that application here would not have a retroactive effect because defendants had a legal duty to refrain from torture even prior to the TVPA’s passage. The two other district courts to have considered the issue agreed with the argument advanced by Alvarez-Machain, see Xuncax v. Gramajo, 886 F.Supp. 162 (D.Mass.1995); Cabiri v. Assasie-Gyimah, 921 F.Supp. 1189 (S.D.N.Y. 1996), but it appears to be an issue of first impression for the Circuit courts.
The Torture Victim Protection Act is silent with regard to whether Congress intended for it to apply retroactively. Absent clear Congressional intent, there exists a strong presumption against retroactivity. However, not every application of a statute to events occurring before its enactment constitutes a “retroactive application.” An application does not have a retroactive effect unless “it would impair rights a party pos-, sessed when he acted, increase a party’s liability for past conduct, or impose new duties with respect to transactions already completed.” Landgraf v. USI Film Products, 511 U.S. 244, 280, 114 S.Ct. 1483, 1505, 128 L.Ed.2d 229 (1994). Courts regularly apply new statutes to past events when the intervening statute authorizes or affects the propriety of prospective relief; where the intervening statute confers or ousts jurisdiction; or when the intervening statute merely changes the procedural landscape. Id. 511 U.S. at 272-276, 114 S.Ct. at 1501-1502.
The Torture Victim Protection Act does not impose new duties or liabilities on defendants. Torture has long been condemned and prohibited by international law. See, e.g., Filartiga v. Pena-Irala, 630 F.2d 876 (2d Cir.1980). Further, aliens have had the right to adjudicate torture claims in our federal courts since the passage of the Alien Tort Claim Act (ATCA) in 1789.[3]
Defendants attempt to distinguish the ATCA from the TVPA in three ways, but *-881 none warrants a holding that application of the TVPA to defendants’ conduct would have a retroactive effect.
First, defendants argue that the ATCA confers jurisdiction on federal courts to hear international law claims, but does not create a substantive, federal right like the TVPA. Defendants err in their description of the ATCA; we have previously held that the ATCA has a substantive as well as a jurisdictional component. In re Estate of Ferdinand Marcos, Human Rights Lit., 25 F.3d 1467 (9th Cir.1994)(Marcos II), cert. denied — U.S. —, 115 S.Ct. 934, 130 L.Ed.2d 879 (1995). Accord Xuncax, 886 F.Supp. 162; Cabiri, 921 F.Supp. 1189. In Marcos II we stated,
in contrast to section 1331 “which requires that an action ‘arise under’ the laws of the United States, section 1350 does not require that the action ‘arise under’ the law of nations, but only mandates a “violation of the law of nations’ in order to create a cause of action.” Tel-Oren v. Libyan Arab Republic, 726 F.2d 774, 779 (D.C.Cir. 1984) (Edwards, J., concurring), cert. denied, 470 U.S. 1003, 105 S.Ct. 1354, 84 L.Ed.2d 377 (1985).
Id. at 1475. The court further explained, “International law does not require any particular reaction to violations of law.... Whether and how the United States wished to react to such violations are domestic questions. [Internal quotation marks and citation omitted.]” Id. See also Filartiga, 630 F.2d 876 (holding that claims of torture could be adjudicated under the ATCA because torture constituted a violation of international law).
Our conclusion in Marcos II is supported by the legislative history of the TVPA.
The TVPA would establish an unambiguous and modern basis for a cause of action that has been successfully maintained under an existing law, section 1350 of the Judiciary Act of 1789 (the Alien Tort Claims Act), which permits Federal district courts to hear claims by aliens for torts committed “in violation of the law of nations.” ... Section 1350 has other important uses and should not be replaced. There should also, however, be a clear and specific remedy, not limited to aliens, for torture and extrajudicial killing.
H.R.Rep. (Judiciary Committee) No. 367(1), 102nd Cong., 1st Sess. (1991), reprinted in 1992 U.S.C.C.A.N. 84, 86; see also S.Rep. (Judiciary Committee) No. 249, 102nd Cong., 1st Sess. (1991).
Second, defendants argue that the TVPA expands the class of plaintiffs able to bring claims for torture, and thus creates new duties. Where the ATCA allows only aliens to bring actions in U.S. courts for extraterritorial torture, the TVPA allows aliens and citizens to bring such claims. The defendants’ distinction is without significance, however, because citizens have always been able to bring claims for extraterritorial torture in state courts under the transitory tort doctrine. The TVPA merely allows citizens now to bring those claims in federal court as well. There is no increase in duties or liabilities, and thus no retroactive effect.
Third, defendants argue that the TVPA increases liabilities by exposing a new class of defendants to personal liability. Under the ATCA, defendants maintain, individuals would not be held personally liable for acts of torture if, while acting under the color of foreign authority, they were also working within the scope of employment for the United States. In such cases, the United States would be substituted as the defendant, and the individuals would escape personal liability. Because no substitution is allowed under the TVPA, defendants claim they are newly burdened with liability they did not have before 1992.
Defendants postulate a set of circumstances that are too remote to affect our retroactivity analysis. If courts were required to give weight to every hypothetical suggestion advanced by litigants, few statutes would survive the Landgrajf test.
V. Conclusion
The judgment of the district court is AFFIRMED insofar as it dismissed the constitutional claims arising out of harms suffered by the plaintiff in Mexico; we AFFIRM the denial of the government’s defense based on the statute of limitations; and the denials of motions to dismiss on the basis of qualified *-880 immunity. We REVERSE the ruling that the TVPA claims were barred because application of the statute to events taking place prior to its enactment would have a retroactive effect. We REMAND the case to the district court for further proceedings.
The plaintiff is entitled to costs on appeal.

. Codified in the statutory notes to 28 U.S.C. § 1350. ■

. In no. 95-55768, the United States appeals the order denying its motion to dismiss the Federal Tort Claims Act causes of action.
In no. 95-55464, the DEA defendants appeal the order denying their motion to dismiss the constitutional claims' for actions taken in the United States.
In no. 95-56121, Alvarez-Machain appeals the dismissal of his constitutional claims for actions taken in Mexico, and the dismissal of his claims under the TVPA.
Garate-Bustamante and Sosa also appealed the orders pertaining to their motions for dismissal based on qualified immunity and their motions for substitution of the United States as defendant in the tort actions. These appeals were dismissed by this court pursuant to Johnson v. Jones, — U.S. —, 115 S.Ct. 2151, 132 L.Ed.2d 238 (1995). Nos. 95-55467 and 95-55469.

. The ATCA provides: "The district courts shall have original jurisdiction of any civil action by an alien for a tort only, committed in violation of *-881 the law of nations or a treaty of the United States.” 28 U.S.C. § 1350.