**Janet S. EVANS, Appellant,**

v.

**Anthony J. PRINCIPI, Secretary of Veterans Affairs, Appellee.**

No. 01–1695.

United States Court of Appeals
for Veterans Claims.

Argued Nov. 6, 2002.

Decided March 18, 2003.

Michael P. Horan, with whom Morgain M. Sprague, both of Washington, D.C., was on the pleadings, for the appellant.

Cristine D. Senseman, with whom Tim S. McClain, General Counsel; R. Randall Campbell, Assistant General Counsel; and Thomas A. McLaughlin, Special Assistant to the Assistant General Counsel, all of Washington, D.C., were on the pleadings, for the appellee.

Before KRAMER, Chief Judge, and STEINBERG and GREENE, Judges.

STEINBERG, Judge, filed the opinion of the Court and separate views.

STEINBERG, Judge:

Before the Court is the jurisdictional issue of whether the appellant's Notice of Appeal (NOA) was timely filed either under 38 U.S.C. § 7266(c)(2) or by virtue of applying the principles of equitable tolling to the 120–day judicial-appeal period found in 38 U.S.C. § 7266(a). (All references herein to section 7266 are to that section as redesignated by section 507 of the Veterans Education and Benefits Expansion Act of 2001, Pub.L. No. 107–103, 115 Stat. 976, 997 (2001).) Specifically, because the NOA was docketed as filed on September 27, 2001, the date it was actually received by the Court, the NOA would be untimely as to the Board of Veterans' Appeals (Board or BVA) decision of which the appellant seeks review, unless either the postmark rule under section 7266(c) or equitable tolling is applied. *See* 38 U.S.C. § 7266; U.S. Vet.App. R. 4(a). For the reasons set forth below, the Court holds that the appellant's NOA was timely filed, and the appeal will proceed before a single judge.

## I. Relevant Background

On September 27, 2001, the Court received both the original and a photocopy of the then-pro se appellant's NOA seeking review of a May 25, 2001, Board decision. The photocopied NOA and the envelope in which it was received (addressed to the Department of Veterans Affairs (VA) Office of the General Counsel (GC)), according to the Clerk of the Court (Clerk), were received in the morning of September 27, 2001, from the VAGC (a fact that was noted on that document). The NOA was stamped as the "ORIGINAL" because it

was the only NOA bearing the appellant's name in the Court's Public Office (PO) at that time, and it provided the basis for opening the Court's case file and docket. According to the Clerk, the second NOA bearing the appellant's name that was received that day in the mail via the U.S. Postal Service (USPS), and not from the VAGC, was actually the original (although it was stamped as a "COPY" because it was received after the case had been opened that morning) and was eventually filed in the case file. (Although "COPY" was stamped on it, that NOA will be hereinafter referred to as the "original NOA".) The Clerk has further advised, however, that the envelope in which that original NOA was received was mistakenly not filed in the case file or otherwise retained. The PO's daily incoming mail log for September 27, 2001, shows receipt, inter alia, on that date of an NOA for this case. According to the Clerk, this log entry must have been a reference to the receipt of the original NOA, because NOA copies received from the VAGC are not recorded on that log. Both the original NOA and the photocopy were stamped "RECEIVED" on September 27, 2001.

The Court's case file also contains a certified-mail receipt, provided by the appellant, from the USPS showing a mailing to "Clerk, U.S. Court of Appeals for Veterans Claims[,] 625 Indiana Ave NW[,] Suite 900[,] Washington, DC 20004", which is the Court's address. That receipt bears a date-stamp notation signifying that the mailing occurred on September 22, 2001. Furthermore, the case file contains a return-receipt card, provided to the Court by the appellant, that acknowledges the Court's receipt of the item mailed on September 22 via USPS and bearing a partial postmark and a date, September 27, 2001, handwritten in the "Date of Delivery" box. (The appellant submitted to the Court on January 14, 2002, via facsimile, copies of that certified-mail receipt and return-receipt card and later resubmitted, through counsel, copies of those documents as part of an exhibit attached to a March 1, 2002, pleading.) According to the Clerk, the return-receipt card bears the signature of a member of the Court's staff; the signature signifies acceptance of the mailed item on behalf of the Court on September 27, 2001. The Court's case file also contains a copy of a USPS sales receipt, also provided by the appellant, that itemizes the postage cost for two separate mailings and is dated "9/22/2001" and time-stamped "11:04:01 AM". The sales receipt reflects that two items were mailed via certified mail on that date. One item is identified with the same certified-mailing number (70010320000127225743) found on the envelope (which is in the case file) that contained the photocopied NOA stamped "ORIGINAL", that was delivered to the Court by VAGC, and that bears a September 22, 2001, postmark. The other item is identified by the same certified-mailing number (70010320000127225729) found on the certified-mail receipt that bears the Court's address and on the return-receipt card signed by the member of the Court's staff.

Since submitting the NOA, the appellant has retained counsel, and this matter was referred to the instant panel for further consideration. The Court then issued a March 21, 2002, briefing order in which it ordered the parties to file memoranda of law addressing the following issues: (1) The application of 38 U.S.C. § 7266(c) in this case, (2) the applicability of "extraordinary circumstances" equitable-tolling principles to the facts of this case, and (3) the relevance, if any, to this case of the policy set forth in Rule 26(a)(3) of the Federal Rules of Appellate Procedure (FRAP), which excludes from the last day of any time period specified in FRAP "a

day on which the weather or other conditions make the clerk's office inaccessible". *Evans (Janet) v. Principi*, 16 Vet.App. 28, 30–31 (2002) (per curiam order).

The appellant and the Secretary each filed a memorandum of law in response to the Court's March 2002 order, and the appellant filed a reply. The appellant subsequently filed a notice of supplemental authority, in which she noted the potential relevance to this case of the opinion of the U.S. Court of Appeals for the Federal Circuit (Federal Circuit) in *Jaquay v. Principi*, 304 F.3d 1276 (Fed.Cir.2002) (en banc). On November 1, 2002, the Secretary filed a notice of supplemental authority regarding *Jaquay, supra, Lariosa v. Principi*, 16 Vet.App. 323 (2002) (per curiam order), and *Mapu v. Principi*, 16 Vet.App. 320 (2002) (per curiam order).

## II. Contentions of the Parties

In her memorandum of law, the appellant asserts that her NOA was timely filed under 38 U.S.C. § 7266(c) because it was properly addressed to the Court and because the certified-mail receipt was postmarked within the judicial-appeal period. Memorandum (Mem.) at 3–4. The appellant asserts that in *Santoro v. Principi*, 274 F.3d 1366 (Fed.Cir.2001), the Federal Circuit "accepted a certified-mail receipt containing a postmark proving that an NOA was mailed within 120[ ] days after the BVA decision[ ] as sufficient for proving that the NOA was timely under 38 U.S.C. § 7266(c)". Mem. at 4.

With regard to the applicability of "extraordinary circumstances" equitable-tolling principles, the appellant asserts that because her NOA was timely filed, she "has no need to avail herself of equitable[-]tolling principles". Mem. at 5. She asserts that even if the Court does not deem her NOA timely, the Court should **not** apply the "extraordinary circumstances" theory because "it can be too restrictive" (Mem. at 5); she urges the Court to adopt a more liberal equitable-tolling standard given that "the veterans benefits context involves paternalistic statutory provisions in which Congress intended to allow liberal judicial review of claims" (Mem. at 8).

In his memorandum of law, the Secretary asserts that because the envelope that contained the NOA that was mailed via USPS to the Court is not available (1) the date of the postmark on the NOA's "cover"—that is, envelope—cannot be ascertained according to section 7266, and (2) the plain meaning of section 7266(c)(2) and (d) "seem[s] to preclude a finding of jurisdiction ... where the mailing envelope is simply not available for inspection" (Mem. at 6); the Secretary further contends that section 7266(d) requires "inspection of an envelope to establish the date of mailing" (Mem. at 10). The Secretary assets that *Santoro, supra,* is not controlling because the Federal Circuit there "ignored the evidentiary problem posed by veteran Santoro (and now by [the appellant]) when the USPS postmark date cannot be ascertained because there is no 'cover in which the notice is posted' that can be inspected." Mem. at 9. The Secretary acknowledges that when, as here, an appellant proffers a certified-mail receipt, a return-receipt card, and confirmation that the signatory on the return-receipt card is the addressee or the agent or employee of that addressee, that appellant "has done everything possible to establish the circumstances of mailing." Mem. at 10. He contends, however, that Congress "could have easily provided [for purposes of section 7266] alternative methods for establishing the circumstances of mailing, but did not do so." Mem. at 10.

With regard to the applicability of equitable-tolling principles, the Secretary argues that this Court and the Federal

Circuit have interpreted those principles narrowly and applied them sparingly and that they "should not be expanded to allow the statutory filing deadline to be tolled in '[extraordinary] circumstances'". Mem. at 11–12. He characterizes the applicable equitable-tolling caselaw as permitting equitable tolling "when a claimant had actively pursued his [or her] judicial remedies, but had filed a defective pleading (during the statutory period) or had been tricked or induced by his adversary's conduct into allowing the statutory deadline to pass" (Mem. at 11 (citing *Bailey v. West*, 160 F.3d 1360, 1368 (Fed. Cir.1998) (en banc))), and suggests that neither of these two prongs applies here (Mem. at 12). The Secretary concludes that "[t]his is not a case in which the circumstances are so extraordinary ... as to require equitable tolling". Mem. at 12, 13. Finally, the Secretary, citing *Bailey*, 160 F.3d at 1367, asserts that the FRAP "govern appeals from Article III District Courts and do not apply to proceedings in this forum." Mem. at 13. In her reply, the appellant reiterates her prior arguments. Reply at 1–3.

At oral argument before the Court, the appellant asserted that if the Court were to find her NOA not timely filed under section 7266, then the Court should apply equitable-tolling principles to do so; the appellant asserted that the "extraordinary circumstances" theory could be applicable in the VA context. The Secretary acknowledged that the documents that the Court and VA had received were the subjects of the mailing receipts provided by the appellant. The Secretary then revised his prior statements regarding the inapplicability of equitable-tolling principles to the instant case and asserted that the Court, based on *Jaquay, supra,* should deem the coverless NOA timely filed as a defective pleading or, alternatively, deem

it timely under the extraordinary-circumstances basis for equitable tolling.

### III. Analysis

#### A. Law on Jurisdiction

Section 7266 of title 38, U.S.Code, provides:

(a) In order to obtain review by the Court of Appeals for Veterans Claims of a final decision of the Board ..., a person adversely affected by such decision shall file a notice of appeal with the Court within 120 days after the date on which notice of the decision is mailed pursuant to section 7104(e) of this title.

(b) An appellant shall file a notice of appeal under this section by delivering or mailing the notice to the Court.

(c) A notice of appeal shall be deemed to be received by the Court as follows:

(1) On the date of receipt by the Court, if the notice is delivered.

(2) On the date of the [USPS] postmark stamped on the cover in which the notice is posted, if the notice is properly addressed to the Court and is mailed.

(d) For a notice of appeal mailed to the Court to be deemed to be received under subsection (c)(2) on a particular date, the [USPS] postmark on the cover in which the notice is posted must be legible. The Court shall determine the legibility of any such postmark and the Court's determination as to legibility shall be final and not subject to review by any other Court.

38 U.S.C. § 7266.

The ultimate burden of establishing jurisdiction rests with the appellant. *See McNutt v. G.M.A.C.*, 298 U.S. 178, 189, 56 S.Ct. 780, 80 L.Ed. 1135 (1936); *Bethea v. Derwinski*, 2 Vet.App. 252, 255 (1992). Pursuant to 38 U.S.C. § 7266, in order for a claimant to obtain review of a BVA decision by this Court, that decision must

be final and the person adversely affected by it generally must file a timely NOA with the Court. *See Bailey*, 160 F.3d at 1363. *But see Santana–Venegas v. Principi*, 314 F.3d 1293, 1298 (Fed.Cir.2002) (holding as matter of law that, in light of VA guidelines on providing timely assistance and timely response to correspondence sent to VA, where veteran misfiles NOA at VA regional office where he filed his original claim but files that NOA within 120–day judicial-appeal period, that period is tolled until Court actually receives NOA). To have been timely filed under 38 U.S.C. § 7266 and Rule 4 of this Court's Rules of Practice and Procedure (Rules), an NOA generally must have been received (or, in certain circumstances, be deemed received) by the Court not later than 120 days after notice of the underlying final BVA decision was mailed. *See Cintron v. West*, 13 Vet.App. 251, 254 (1999); *Leonard v. West*, 12 Vet.App. 554, 555 (1999) (per curiam order); *see also* 38 U.S.C. § 7266(c)(2). *But see Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990); *Evans (Billy) v. West*, 12 Vet.App. 396, 399 (1999) (citing *Bailey*, 160 F.3d at 1365, and other cases regarding equitable tolling of NOA-filing period under certain circumstances); *see also Jaquay* and *Santoro*, both *supra; Linville v. West*, 165 F.3d 1382, 1385–86 (Fed.Cir.1999).

In the instant case, the parties do not dispute the following facts: The Board mailed its decision on May 25, 2001, in compliance with 38 U.S.C. § 7104(e); the appellant mailed to the Court her NOA via USPS on September 22, 2001; the Court received the appellant's NOA on September 27, 2001, five days after the expiration of the 120–day appeal period; and, upon receipt, the envelope that had contained the NOA was inadvertently discarded by Court staff. There is no envelope, therefore, to establish by a postmark on it that the appellant "filed" her NOA within the 120–day appeal period pursuant to section 7266.

## B. Application of Section 7266(c)(2) and (d) Requirements to Facts of Case

In order to establish that she has timely filed her NOA even though the envelope is not available to the Court, the appellant presents to the Court a postmark-stamped certified-mail receipt and argues that that postmark demonstrates that she mailed her NOA by USPS certified mail on September 22, 2001, within the 120–day judicial-appeal period, *see* 38 U.S.C. § 7266(a), (c)(2). The Court notes that the language of the statute is far less clear than the Secretary contends in that subsections (c) and (d) of section 7266 contain ambiguities that could yield a number of results that there is no indication that Congress intended. For example, subsection (c) refers to an NOA's being "deemed to be received", yet subsections (a) and (b) speak only to an NOA's being "file[d]". Hence, subsection (c)'s deeming an NOA "received", literally read, seems to be without significance. Moreover, subsection (c)(2) specifies that it is the "notice" (that is, the NOA) that needs to be properly addressed, as distinguished from the "cover". This provision technically could be read to permit a postmark on an envelope (that contained a properly addressed ***notice***) that was mailed to anywhere other than the Court to be considered timely filed when it finally arrived at the Court, even years after it was mailed (indeed, the immediately preceding language ("postmark stamped on the cover in which the notice is posted", 38 U.S.C. § 7266(c)(2)) almost compels this reading). Finally, subsections (c)(2) and (d) could also be read to mean that the "cover" means only the envelope and does not include anything attached to the envelope, a reading that we will reject in this

case. None of these literal readings would comport with the common-sense reading of congressional intent to provide for a liberalized but objectively discernible means of determining whether an NOA was timely filed. *See* S.REP. No. 103–232, at 6 (1994) (noting that new postmark rule would "ease compliance with statutory filing requirements and avoid unfortunate dismissals of appeals that are mailed within a reasonable period of time prior to the expiration of the 120–day period but received by the Court after that date").

Most relevant to this case, the statute is not clear as to whether, as the Secretary contends, the envelope itself must be available in order for the Court to determine the date of the "postmark stamped on the cover". 38 U.S.C. § 7266(c)(2). The highly literal reading of the cover requirement urged by the Secretary does not comport with the above-described common-sense reading of congressional intent to provide for a liberalized, as well as objectively discernible, means of determining whether an NOA was timely filed. Nor would it appear to comport with the Federal Circuit's opinion in *Santoro, supra,* in which section 7266(c)(2) was applied even though the envelope in which the NOA was mailed was apparently not available.

The question at this juncture is whether the September 22, 2001, postmark-stamped certified-mail receipt satisfies the requirements of section 7266(c)(2) and (d). In that regard, the USPS has promulgated regulations regarding domestic mail services. *See* 39 C.F.R. §§ 111.1, 111.5 (2002). Those regulations incorporated by reference the USPS *Domestic Mail Manual* (DMM). The DMM section containing information and procedures for certified mail provides in pertinent part:

> 2.5 A mailer of certified mail must:
>
> . . . .

> d. If a postmarked sender's receipt is requested, attach the certified mail sticker to the address side of the article and present the article and the completed receipt to the USPS employee, who then round-dates the receipt to show when the article was accepted.

DMM § S912, ¶ 2.5(d) (Jan. 9, 2003). Hence, a sender of certified mail who wishes a certified-mail receipt must complete the certified-mail label, place the completed certified-mail label on the envelope, and give to the USPS mail clerk the envelope with the certified-mail receipt attached. Following acceptance of the envelope for mailing, the mail clerk then postmarks the certified-mail receipt to show when the article was accepted for mailing. *Ibid.*

Pursuant to section 7266(c)(2), the appellant is entitled, once her NOA is received by the Court, to have her NOA filed as of the date of the USPS postmark stamp on the cover in which the NOA was posted. Without an appellant's envelope, the Court generally could not determine the date of the postmark stamp; here, however, the appellant has proffered a postmark stamp on a certified-mail receipt that, according to well-established USPS mailing and postmarking practices, was part of the NOA envelope at the time the NOA was posted. *See* 39 C.F.R. §§ 111.1, 111.5; DMM § S912, ¶ 2.5(d). The lack of statutory clarity, the remedial nature of the statute, *see* S.REP. No. 103–232, at 6, and the command of the U.S. Supreme Court in *Brown v. Gardner,* 513 U.S. 115, 117, 115 S.Ct. 552, 130 L.Ed.2d 462 (1994), to resolve interpretive doubt in favor of the claimant all counsel strongly in favor of construing the statute liberally.

█ Because the certified-mail receipt was, at the time of mailing, part of the cover, or envelope, that contained the appellant's NOA, the Court considers the

postmark stamp on that certified-mail receipt to have been on the NOA cover. Accordingly, the Court holds that a postmark-stamped certified-mail receipt satisfies the statutory requirement of a "postmark stamped on the cover in which the notice is posted". 38 U.S.C. § 7266(c)(2). In any event, the certified-mail-receipt postmark constitutes, under USPS regulations, DMM § S912, ¶ 2.5(d), the evidentiary equivalent of a postmark on the NOA cover because under the DMM that same postmark date would have been on the envelope. *Cf. Woods v. Gober*, 14 Vet.App. 214, 221 (2000) (holding that presumption of regularity establishes that appellant's address was identical on two different copies of same document even though one copy was faulty and did not include full address).

■ In addition to satisfying the section 7266(c)(2) requirements under either of the theories of compliance set forth in the preceding paragraph, the appellant must meet the section 7266(d) requirement that "the [USPS] postmark on the cover in which the notice is posted must be legible." 38 U.S.C. § 7266(d). Congress has entrusted the Court with the sole responsibility to "determine the legibility of any such postmark". 38 U.S.C. § 7266(d) ("the Court's determination as to legibility [of a postmark] shall be final and not subject to review by any other Court"). In that regard, the Court has already determined that the date of the certified-mail-receipt postmark was stamped "on the cover in which the notice [was] posted". 38 U.S.C. § 7266(d). The Court now determines, from a review of the copy of the postmark-stamped certified-mail receipt provided by the appellant, that that postmark contains a legible date, September 22, 2001. Accordingly, the Court holds that the September 22, 2001, postmark date on the certified-mail receipt establishes conclu-

sively that the appellant's NOA was filed with the Court on the date of that postmark and that the appellant has therefore satisfied the timely filing requirements of 38 U.S.C. § 7266.

### C. Miscellaneous Matter

Regarding FRAP Rule 26(a)(3), the Court stated in *Mapu, supra*, that that rule is not applicable to filings with this Court and that this Court's Rules do not provide for deeming the Court "inaccessible". *Mapu*, 16 Vet.App. at 322. *Compare* FED. R.APP. P. 26(a)(3) (excluding from filing period day "on which the weather or other conditions make the clerk's office inaccessible"), *with* U.S. VET. APP. R. 26(a)(1) (addressing computing time periods set by Court's Rules but containing no such exclusion). *Cf. In Re: Rules of Practice and Procedure*, Misc. Order No. 1–03, 16 Vet.App.Ct.R–1, at Ct.R–11 (advance sheet No. 2, Feb. 2003) (Jan. 15, 2003) (en banc) (making comprehensive revision of Court's Rules, effective February 14, 2003, including amendment of Rule 26(a)(1), so as to provide that last day of filing period will not be day "when the weather or another condition makes the Clerk's Office inaccessible").

### IV. Conclusion

Upon consideration of the foregoing analysis and the submissions of the parties, the Court holds that the appellant's NOA was timely filed under 38 U.S.C. § 7266(c) and (d), and the Clerk is directed to correct the docket to show the filing of the NOA on September 22, 2001; the appeal will proceed before a single judge. Not later than 30 days after the date of this opinion, the Secretary will file with the Clerk and serve on the appellant the designation of the record on appeal.

APPEAL TIMELY FILED; CASE

RETURNED TO SINGLE JUDGE.*

### SEPARATE VIEWS

STEINBERG, Judge, filed the opinion of the Court and separate views.

I write separately to set forth my view that if the statute were not construed as permitting the application to the facts of this case of the postmark rule under 38 U.S.C. § 7266(c) and (d)[1]—for example, had the appellant not mailed the letter by certified mail or had the postmark on the certified-mail receipt not been legible— then, I would sustain the timeliness of the appellant's Notice of Appeal (NOA) by the application of equitable-tolling principles. Indeed, as the opinion of the Court notes, the appellant and the Secretary both took the position at oral argument that the facts of this case would be appropriate for the application of equitable-tolling principles.

### I. *General Principles*

The Supreme Court in *Irwin v. Department of Veterans Affairs* held that equitable-tolling principles that apply to private litigants also apply to the United States and that tolling may be available against the United States under two prongs: (1) "[W]here the claimant has actively pur-

sued his judicial remedies by filing a defective pleading during the statutory period, ... or [(2)] where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass". *Irwin*, 498 U.S. 89, 95–96, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990) (footnotes omitted). In adopting a rule of general applicability of private-suit equitable-tolling principles to suits against the Federal Government, the Supreme Court seemed to abolish prior equitable-tolling caselaw distinctions between jurisdictional time limits and statutes of limitations.[2] The Supreme Court concluded that equitable-tolling principles could be applied to a filing deadline in an employment-discrimination suit against the Department of Veterans Affairs (VA) but declined to apply those principles there, noting that the Court has been "much less forgiving in receiving late filings where the claimant failed to exercise due diligence in preserving his legal rights" and that those principles "do not extend to what is at best a garden variety claim of excusable neglect." *Id.* at 96, 111 S.Ct. 453.

In *Bailey v. West*, the U.S. Court of Appeals for the Federal Circuit (Federal Circuit) held that, absent a contrary con-

---

* Although Chief Judge Kramer and Judge Greene have not joined Judge Steinberg's separate views, they do not intend thereby to express any view about the reasoning in those views. They believe the issues addressed need not be reached.

1. Regarding the postmark rule in 38 U.S.C. § 7266(a) and (d), any consideration of legislative revisions to section 7266 to clarify its ambiguities might want to take into account recent amendments to U.S. Supreme Court Rule 29.2, which was adopted on January 27, 2003, to be effective May 1, 2003. Rule 29.2 provides that a document is timely filed if it is received by the Clerk of the Court (Clerk) within the time specified for filing or if it is sent to the Clerk through the U.S. Postal Service by first-class mail, postage prepaid, and bears a postmark showing that the docu-

ment was mailed on or before the last day for filing. As amended, Rule 29.2 will also provide that a document is timely filed "if it is delivered on or before the last day for filing to a third-party commercial carrier for delivery to the Clerk within 3 calendar days." Sup.Ct. R. 29.2.

2. *See Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 95, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990) (stating that Supreme Court was "not persuaded" as to meaningful difference, for purposes of availability of equitable tolling, between filing deadline tolled in *Irwin, supra,* and type of deadline involved in *Soriano v. United States*, 352 U.S. 270, 77 S.Ct. 269, 1 L.Ed.2d 306 (1957), where Court had held claim jurisdictionally barred); *Andrews v. Principi*, 16 Vet.App. 309, 316 (2002).

gressional expression, this Court would be entitled to toll the 120–day period in 38 U.S.C. § 7266(a) for filing an NOA in this Court. *Bailey,* 160 F.3d 1360, 1365 (Fed. Cir.1998) (en banc). Specifically, the Federal Circuit held that that filing period could be tolled where a veteran was misled by a VA benefits officer into believing that the officer would file his NOA for him. *Ibid.* The court stressed the "particular" relationship between veterans and the government in finding that that veteran "was misled by the conduct of his adversary into allowing the filing deadline to pass." *Ibid.* The court held that, although there was no suggestion of misconduct, such as tricking the veteran into missing the 120–day NOA filing deadline, "a veteran's inducement by an adversary's conduct is akin to grounds sufficient to toll a limitations period in a private suit." *Ibid.* (citing *Irwin, supra*).

When applying equitable-tolling principles in the NOA context after *Irwin, supra,* the Federal Circuit has found NOAs timely filed despite seemingly clear language in title 38 statutory and regulatory provisions setting forth the 120–day filing deadline. For example, in *Linville v. West,* the Federal Circuit held that, in keeping with *Rosler v. Derwinski,* 1 Vet. App. 241, 249 (1991), a VA postmark regulation (VA receipt on the date of a postmark) applied to motions for reconsideration by the Board of Veterans' Appeals (BVA or Board) so as to toll the section 7266(a) 120–day filing deadline. *Linville,* 165 F.3d at 1386 (Fed.Cir.1999). The Federal Circuit so held even though reconsideration motions generally "may be filed at any time", 38 C.F.R. § 20.1001(b) (2002), and the VA regulation being applied provided specifically that the postmark rule applied to filings with VA only "[w]hen these Rules [that is, VA regulations] require that any written document be filed within a specified period of time", 38 C.F.R. § 20.305(a) (2002). *Linville,* 165

F.3d at 1385–86. The Federal Circuit stated that adopting a contrary position "would erect obstacles to a claimant who wished to seek administrative reconsideration without risk of extinguishing appellate rights". *Id.* at 1386.

Later, in *Santoro v. Principi,* the Federal Circuit held that an NOA that was addressed to the Court but included an incorrect Zip Code number that had caused it to be delivered to the VA General Counsel rather than the Court was "properly addressed" to the Court and thus, by implication, was timely filed under section 7266(c)(2) (formerly 38 U.S.C. § 7266(a)(3)(B)) even though the NOA and the cover in which the NOA was sent were apparently not available. *Santoro,* 274 F.3d 1366, 1370 (Fed.Cir.2001) (reversing this Court's decision that it had no jurisdiction because NOA was not timely filed, *Santoro v. West,* 13 Vet.App. 516, 522–23 (2000)). The Federal Circuit did not address the portion of section 7266(c)(2) that specifies that the NOA be deemed received "[o]n the date of the United States Postal Service [ (USPS) ] postmark stamped on the cover in which the notice is posted", 38 U.S.C. § 7266(c)(2).

Most recently, in *Santana–Venegas v. Principi,* 314 F.3d 1293 (Fed.Cir.2002), and *Jaquay v. Principi,* 304 F.3d 1276 (Fed.Cir.2002) (en banc), the Federal Circuit applied equitable-tolling principles to this Court's 120–day NOA-filing period. In *Jaquay,* the Federal Circuit held that the claimant there had actively pursued his judicial remedies by filing during the statutory judicial-appeal period a motion for BVA reconsideration, which the court considered a "defective pleading", where the claimant had misfiled that motion with a local VA regional office (RO) rather than the BVA, and the VARO did not forward the motion to BVA until 10 months after the motion had been filed. *Jaquay,* 304

F.3d at 1288–89. The court so held despite the fact that the appellant had received specific notice from the BVA to file the motion with the BVA and despite a VA regulation requiring that motions for BVA reconsideration *"must"* be filed at the Board, 38 C.F.R. § 20.1001(b) (emphasis added). *Jaquay, supra.* The *Jaquay* court stressed the "paternalistic" and "'uniquely pro-claimant'" nature of the veterans benefits system. *Id.* at 1280 (quoting *Hensley v. West,* 212 F.3d 1255, 1262 (Fed.Cir.2000), and *Nolen v. Gober,* 222 F.3d 1356, 1361 (Fed.Cir.2000)). The court also stressed the RO's obligation to respond to correspondence: "[E]ven misdirected mail will be forwarded or returned in due course and ... proceedings will not be unduly delayed even where papers are inadvertently misfiled, provided they are misfiled within the agency itself." *Id.* at 1288 (citing VA Adjudication Procedure Manual, M21–1, Part III, para. 11.02). In *Santana–Venegas,* the Federal Circuit extended *Jaquay, supra,* by holding that the misfiling of an NOA, within the 120–day judicial appeal period, at the same RO from which the claim originated rather than at the Court, tolled the period for filing a timely NOA until VA delivered the NOA to the Court; the Federal Circuit so held despite the instructions in the notice of appellate rights accompanying the copy of the BVA decision mailed to the appellant. *Santana–Venegas,* 314 F.3d at 1298. The court noted that the RO had informed the veteran of the misfiling twenty days

after the 120–day appeal period had expired and 70 days after having received the NOA, *id.* at 1296, and reiterated its statement from *Jaquay* that it is not unreasonable for veterans to rely on VA policies that provide reasonable assurances that misdirected mail will be forwarded or returned in due course and that proceedings will not be unduly delayed where the papers are misfiled at the same RO from which the claim originated, *id.* at 1298.

As to the two prongs of *Irwin* and *Bailey,* both *supra,* contrary to the Secretary's position at oral argument, the first prong of *Irwin, supra,* does not seem applicable to the facts of this case in the absence of our holding that there was section 7266(a) compliance based on the postmark rule, because that prong applies only where a defective pleading was filed *within the statutory period.* See *Irwin,* 498 U.S. at 96, 111 S.Ct. 453; *Jaquay,* 304 F.3d at 1289. Moreover, here the pleading was not defective as filed but was rendered defective by the Court's inadvertent discarding of the envelope. As to the second *Irwin/Bailey* prong, the appellant has alleged no misleading conduct on the part of the Secretary or his agents.

## II. Equitable Tolling Based on *"Extraordinary Circumstances"*

Subsequent to *Irwin,* at least five U.S. courts of appeals have recognized "extraordinary circumstances" equitable-tolling principles in both civil and criminal cases.[3] The extraordinary-circumstances

---

**3.** See, e.g., *Hill v. Braxton,* 277 F.3d 701, 704 (4th Cir.2002) (noting that equitable tolling is available in instances "where—due to circumstances external to the party's own conduct—it would be unconscionable to enforce the limitation against the party") (internal citations and quotations omitted); *United States v. Clymore,* 245 F.3d 1195, 1199 (10th Cir. 2001) (per curiam opinion) (noting that equitable tolling is appropriate where, inter alia, "extraordinary circumstances" prevent claim-

ant from filing his or her claims within statutory period (citing *Hanger v. Abbott,* 6 Wall. 532, 73 U.S. 532, 542, 18 L.Ed. 939 (1867), which held that extraordinary circumstances tolled statute of limitations where courts in Southern States were closed during Civil War)); *see also United States v. Marolf,* 173 F.3d 1213, 1218 n. 3 (9th Cir.1999); *Briley v. Carlin,* 172 F.3d 567, 570 (8th Cir.1999); *Oshiver v. Levin, Fishbein, Sedran & Berman,* 38 F.3d 1380, 1387 (3d Cir.1994).

approach permits a court to apply equitable principles to toll a filing deadline where the filing party is prevented by circumstances beyond his or her control from meeting that deadline. In *Lake v. Arnold,* the U.S. Court of Appeals for the Third Circuit held that, if the plaintiff's allegations proved true on remand, "extraordinary circumstances" might warrant the equitable tolling of a deadline for filing a civil rights suit against legal guardians charged with the care of a mentally incompetent plaintiff where that plaintiff was prevented from timely filing because those charged with acting on her behalf had failed to do so and she was unable to advocate her own interests. *Lake,* 232 F.3d 360, 370–71 (3d Cir.2000). In describing equitable-tolling principles that could permit the plaintiff's civil rights suit to go forward, the court noted the remedial nature of the civil rights statutes involved and determined that equitable tolling would promote the congressional intent (to compensate victims whose federal civil rights have been violated and to deter government abuse of power) in enacting that legislation. *Id.* at 369–70 (citing *Bowen v. City of New York,* 476 U.S. 467, 480, 106 S.Ct. 2022, 90 L.Ed.2d 462 (1986) (authorizing equitable tolling where consistent with congressional intent)).

In *Valverde v. Stinson,* the U.S. Court of Appeals for the Second Circuit remanded to the district court a habeas corpus petition so that the lower court might make factual findings regarding the applicability of extraordinary-circumstances equitable-tolling principles. *Valverde,* 224 F.3d 129, 135 (2d Cir.2000). The court there held that the confiscation of the prisoner petitioner's legal papers by a corrections officer "shortly before" the filing deadline for such a petition may constitute "extraordinary circumstances" warranting equitable tolling of the filing deadline. *Id.* at 133–34. The court emphasized that the circumstances must actually prevent timely filing and that such a showing cannot be made where a party acting with reasonable diligence could have filed on time notwithstanding the "extraordinary circumstances". *Ibid.* (citing *Irwin, supra,* and noting that "[t]he word 'prevent' requires the petitioner to demonstrate a causal relationship between the extraordinary circumstances ... and the lateness of his filing"). Regarding the fact that the petitioner there had intended to file his petition late in the filing period, the court stated:

> [W]e note for the benefit of the district court on remand that Valverde is not ineligible for equitable tolling simply because he waited until late in the limitations period to file his habeas petition.... A petitioner should not be faulted ... for failing to file early or to take other extraordinary precautions early in the limitations period against what are, by definition, rare and exceptional circumstances that occur later in that period.

*Id.* at 135–36.

In *Alvarez–Machain v. United States,* the U.S. Court of Appeals for the Ninth Circuit noted the existence of the "extraordinary circumstances" theory and its applicability to a civil suit brought under the Federal Tort Claims Act. *Alvarez–Machain,* 107 F.3d 696, 701 (9th Cir.1996). There, the appellant failed to file an administrative claim until three years after the conduct that gave rise to his claim and one year after the filing deadline had expired. *Id.* at 700. The court reasoned:

> [T]he circumstances of Alvarez–Machain's abduction and subsequent trial warrant the equitable tolling of the statute of limitations. Alvarez–Machain was incarcerated for over two years, facing criminal charges of the highest gravity in a foreign country whose language he did not understand.... Moreover, ...

had he filed an administrative claim prior to obtaining an acquittal, many of his claims would have been dismissed because they necessarily implicated the validity of his criminal charges. *Id.* at 701. The court then concluded that, based on the totality of the circumstances, that case constituted "that rare situation where equitable tolling is demanded by sound legal principles as well as the interests of justice" and affirmed the lower court's denial of the government's motion to dismiss on statute-of-limitations grounds. *Ibid.*

The consideration of the applicability of "extraordinary circumstances" equitable-tolling principles to this Court's NOA-filing period under section 7266(c) and (d) must take account of the recent quartet of Federal Circuit cases that strongly counsel in favor of the application of equitable-tolling principles to the section 7266 filing deadline in appropriate circumstances. *See Santana–Venegas, Jaquay, Santoro,* and *Linville,* all *supra.*[4] In the instant case, the appellant submitted undisputed and undebatable evidence (namely, the USPS certified-mail receipt showing a mailing to the Court before expiration of the 120–day appeal period and bearing a mailing number that matches the one found on the return-receipt card signed by the Court's staff) that she had exercised due diligence in attempting to preserve her legal rights, *see Irwin* and *Jaquay,*

both *supra,* and to file a timely NOA with the Court by mailing her NOA to the Court before the expiration of the judicial-appeal period.[5] Just as in *Valverde, supra,* the appellant demonstrated due diligence notwithstanding that she "waited until late in the limitations period to file". *Valverde,* 224 F.3d at 136. In my view, the Court's intervening and unforeseen act of inadvertently discarding the envelope constituted an extraordinary circumstance beyond the appellant's control because such act could have prevented her NOA from having the opportunity to be considered timely filed by the Court by virtue of the postmark on its cover. That the Court's inadvertent disgarding of the envelope was, indeed, "extraordinary" here is demonstrated (1) by the fact that it appears to be the first case in the more than 16,500 NOAs[6] filed since the postmark rule was enacted on November 4, 1994, in the Veterans' Benefits Improvements Act of 1994, Public Law 103–446, § 511(a), 108 Stat. 4645, 4670, in which the Court has been called upon to address the implications of a discarded envelope, *see Smith (Brady) v. Derwinski,* 1 Vet.App. 235, 238 (1991) ("Courts may take judicial notice of *facts* not subject to reasonable dispute." (citing Fed.R.Evid. 201(b) (1990))), and (2) by the definition of "extraordinary circumstances" in Black's Law Dictionary as "[a] highly unusual set of facts that are not commonly associated with a particular

---

**4.** *See also Davis (Fred A.) v. Principi,* 17 Vet. App. 29, 39–41 (2003) (reexamining Court's caselaw in light of recent Federal Circuit cases regarding tolling of section 7266 appeal period and concluding that tolling not warranted because appellant did not act with necessary due diligence in keeping VA apprised of his current address).

**5.** *Cf. Davis (Fred A.), supra* note 4.

**6.** *See Annual Reports of the U.S. Court of Appeals for Veterans Claims,* at http://www. vet.app.gov/AboutCourt/AnnualReport.asp (last visited Mar. 17, 2003) (1995–2002) (total of cases shown as filed from October 1, 1994, through September 30, 2002; the number of cases reported include an estimated number of petitions filed during eight-year period); *United States Court of Appeals for Veterans Claims Fiscal Year 2004 Budget Estimate,* at 4 (submitted to Congress on February 3, 2003) (noting that new case filings averaged 256 for the last four months of calendar year 2002— that is, October 1, 2002, through January 31, 2003).

thing or event." BLACK'S LAW DICTIONARY 236 (7th ed.1999).[7]

Because the Court did not retain the envelope and because it is undisputed that the appellant exercised due diligence in attempting to preserve her legal rights by making a timely mailing to the Court, the application of "extraordinary circumstances" equitable-tolling principles would be appropriate in my view, thus resulting in the appellant's NOA being considered timely filed if the Court's "cover" determination under section 7266(c)(2) and (d) were overturned or if the Court had not made that determination. The facts of this case would represent "that rare situation where equitable tolling is demanded by sound legal principles as well as the interests of justice", *Alvarez–Machain*, 107 F.3d at 701.

---

**7.** *See Liesegang v. Sec'y of Veterans Affairs,* 312 F.3d 1368, 1374–75 (Fed.Cir.2002) (using BLACK'S LAW DICTIONARY definition of statutory term and relying on *Humana, Inc. v. Forsyth,* 525 U.S. 299, 309–10, 119 S.Ct. 710, 142 L.Ed.2d 753 (1999), *Perrin v. United States,* 444 U.S. 37, 42, 100 S.Ct. 311, 62 L.Ed.2d 199 (1979), and *AK Steel Corp. v. United States,* 226 F.3d 1361, 1371 (Fed.Cir.2000), as authority to do so); *Forshey v. Principi,* 284 F.3d 1335, 1348 & n. 12 (Fed.Cir.2002) (utilizing dictionary definitions to interpret statutory terms); *see also Brown v. Gardner,* 513 U.S. 115, 117–20, 115 S.Ct. 552, 130 L.Ed.2d 462 (1994); *Smith (William A.) v. Brown,* 35 F.3d 1516, 1523 (Fed.Cir.1994) (holding that rules of statutory interpretation apply to interpreting regulations as well).