On Appeal from the Board of Veterans’ Appeals
GREENE, Chief Judge:
Before the Court is the question whether, under 38 U.S.C. § 7266(c) Rafael G. Rios and Johnnie Collins timely filed Notices of Appeal (NOAs). The Court received briefs from the parties and amicus curiae, and a panel of three judges of the Court heard oral argument in these cases on June 16, 2005. Pursuant to the Court’s Internal Operating Procedures at V(b)(5), there was a call for full-Court consideration and on November 17, 2005, the matters were referred to the full Court. Because Mr. Rios’ and Mr. Collins’ NOAs were not timely received by the Court, we dismiss their appeals.
I. BACKGROUND
A. Mr. Rios’ Appeal
On March 4, 2004, the Court received from veteran Rafael Rios a letter dated February 25, 2004, and postmarked March 1, 2004. Mr. Rios wrote that he had submitted to the Court on November 6, 2003, a self-styled Notice of Disagreement (NOD) as to an October 16, 2003, decision of the Board of Veterans’ Appeals (Board), but that he had not yet received any response from the Court. The Court, having no record of receiving the November 6 document, construed Mr. Rios’ February 25, 2004, letter to be an NOA from the October 2003 Board decision; the letter was deemed received by the Court on *106 March 1, 2004, the date of the postmark on the envelope in which the letter was contained. The deadline for filing an NOA to the October 16, 2003, Board decision was February 13, 2004. See 38 U.S.C. § 7266(c). Because Mr. Rios’ letter was received and filed by the Court after the deadline, more than 120 days after the Board mailed its decision to Mr. Rios, the Court ordered Mr. Rios to show cause why his appeal should not be dismissed.
In response to the show-cause order and two subsequent Court orders granting him time to submit additional information, Mr. Rios submitted a copy of the November 6, 2003, document, a copy of a “Page of Registry of Sent Correspondence,” maintained by the Puerto Rico Public Advocate for Veterans Affairs (PRPAVA), and two affidavits from Mrs. Santa Virgen Cruz Carrion, an employee of the PRPAVA who is responsible for logging and handling the mail for PRPAVA. There is no dispute that the November 6, 2003, document, the self-styled “NOD,” meets all of the substantive requirements of an NOA. Mrs. Cruz Carrion attests that she personally mailed the document by placing it in the U.S. Mail on November 6, 2003. She further states that the mailing was recorded on the “Page of Registry.of Sent Correspondence,” which contains a notation of a mailing to the Court on behalf of Mr. Rios. In addition to sending a copy of the NOA to the Court, Mr. Rios states that a copy of the November 6, 2003, document also was sent to the VA Office of General Counsel, which also is noted on the registry.
B. Mr. Collins’ Appeal
On October 6, 2004, the Court received Mr. Collins’ NOA from a January 5, 2004, Board decision. The deadline for filing an NOA to the January 5, 2004, Board decision was May 4, 2004. Because Mr. Collins’ NOA was received more than 120 days after the date of the Board decision, he was ordered to show cause why his appeal should not be dismissed. Mr. Collins replied, through counsel, that on April 30, 2004, an NOA from the January 5, 2004, Board decision was placed in the U.S. Mail at the Brentwood, Tennessee, Post Office and that he had only discovered that the Court did not have his April 30 NOA when counsel filed a notice of appearance on September 24, 2004. Mr. Collins submitted an affidavit to this effect by his counsel’s legal assistant and also submitted a copy of a sales receipt from the Brentwood Post Office indicating that on April 30, 2004, mail was sent by First Class Mail to “Washington, DC 20004.”
II. CONTENTIONS OF THE PARTIES
Mr. Collins, Mr. Rios, and amicus curiae generally argue that the NOAs were timely filed under any one of three theories. First, the parties argue that they have both demonstrated that their NOAs were placed in the U.S. Mail and that, under the common law mailbox rule, the NOAs should be presumed to have been delivered to and received by the Court in regular time, and that this presumption has not been rebutted.[1] Second, the parties argue that extrinsic evidence can be used to show that a postmark indicating the timely date of mailing was affixed on the envelope containing the NOA and, therefore, the NOA should be considered timely under *107 the statutory postmark rule, 38 U.S.C. § 7266(c)(2). Third, the parties argue that they are entitled to equitable tolling of the filing period. See Bailey (Harold) v. West, 160 F.3d 1360 (Fed.Cir.1998) (en banc). The Secretary contends that 38 U.S.C. § 7266(c)(2) is the sole exception to the requirement that an NOA be actually received by the Court for it to be timely, and that, therefore, the common law mailbox rule is not applicable.
III. ANALYSIS
In order to obtain review by the Court of a final Board decision, an appellant must timely file an NOA with the Court. See 38 U.S.C. § 7266(a); Marsh v. West, 11 Vet.App. 468, 469 (1998) (citing Christianson v. Colt Indus. Operating Corp., 486 U.S. 800, 818, 108 S.Ct. 2166, 100 L.Ed.2d 811 (1988)). To be timely under Rule 4 of the Court’s Rules of Practice and Procedure (Rules) and precedents construing 38 U.S.C. § 7266(a), an NOA must generally be filed with the Court within 120 days after notice of the Board decision is mailed to an appellant. 38 U.S.C. § 7266(a); see Cintron v. West, 13 Vet.App. 251, 254 (1999); Leonard v. West, 12 Vet.App. 554, 555 (1999) (per curiam order). Under section 7266(c), however, an NOA will be considered received by the Court (1) “[o]n the date of receipt by the Court, if the notice is delivered,” or (2) “[o]n the date of the United States Postal Service postmark stamped on the cover in which the notice is posted, if the notice is properly addressed to the Court and is mailed.” 38 U.S.C. § 7266(c).
The Court has never applied the common law mailbox rule to section 7266. Under the common law mailbox rule “if a letter properly directed is proved to have been either put into the post office or delivered to the postman, it is presumed, from the known course of business in the post office department, that it reached its destination at the regular time, and was received by the person to whom it was addressed.” Rosenthal v. Walker, 111 U.S. 185, 193, 4 S.Ct. 382, 28 L.Ed. 395 (1884); see also Hagner v. United States, 285 U.S. 427, 430, 52 S.Ct. 417, 76 L.Ed. 861 (1932); Lewis v. United States, 144 F.3d 1220, 1222 (9th Cir.1998); Estate of Wood v. Comm’r, 909 F.2d 1155, 1161 (8th Cir.1990). Thus, applying this rule, an NOA would be considered received and filed by the Court once placed with the U.S. Postal Service even though not actually received by the Court, provided that the NOA was mailed within the 120-day filing period and with sufficient time to be received by the Court within the 120-day filing period.
A. Section 7266 and the Common Law Mailbox Rule

1. Applicability

Under Article I of the U.S. Constitution, Congress established this Court to have exclusive jurisdiction to review decisions of the Board. Veterans Judicial Review Act of 1988 (VJRA), Pub.L. 100-687, Title III, Sec. 301, 102 Stat. 4113 (codified as amended at 38 U.S.C. § 7251 (formerly § 4051)); see also 38 U.S.C. § 7252. Additionally, section 4066 of title 38, U.S.Code, provided:
(a) In order to obtain review by the [Court] of a final decision of the [Board], a person adversely affected by that action must file a[n NOA] with the Court. Any such notice must be filed within 120 days after the date on which notice of the decision is mailed pursuant to section 4004(e) of this title.
38 U.S.C. § 4066, renumbered § 7266 and amended by the Department of Veterans Affairs Health-Care Personnel Act of May 7, 1991, Pub.L. 102-40, § 402(b)(1), (d)(1), 105 Stat. 238, 239. Congress also authorized the Court to prescribe its own rules of *108 practice and procedure. See 38 U.S.C. § 4064 (now § 7264); see also H.R.Rep. No. 100-963, at 33 (1988), U.S.Code Cong. & Admin.News 1988, pp. 5782, 5815 (stating that petitioner would file “formal appeal with the [Court] in accordance with the rules prescribed by the Court”).
Neither section 4066, nor its legislative history, provides a definition of “must be filed”; however, in 1990, the Court offered clarification of section 4066 in Torres v. Derwinski, 1 Vet.App. 15 (1990). In that case, the appellant, in July 1989, notified a VA regional office (RO) that he disagreed with a Board decision. Id. at 16. The RO responded on October 2, 1989, stating that “[t]here is as yet no mailing address for the Court ..., and rules of practice to govern procedural matters have not been issued.” Id. The appellant sent a letter to the RO requesting (1) “full reconsideration by the Judicial Court” and (2) that the RO forward his NOA to the Court. Id. The RO did not do so and only notified the appellant of the Court’s address on the expiration date of a legislative extension for filing NOAs. Id. Immediately after receiving the RO’s notification letter, the appellant mailed his NOA to the Court, but it arrived five days after the extended time for filing an NOA. Id. In deciding whether to accept the NOA as timely, the Court determined that section 4066 “alone controls.” Id. at 17. The Court compared section 4066, which required that an “[NOA] must be filed with the Court within 120 days,” with Rules 3 and 4 of the Federal Rules of Appellate Procedure (FRAP), which required that an “[NOA] must be filed with the clerk of the district court within 60 days if the United States or an officer or agency thereof is a party.” Id.; see 38 U.S.C. § 4066; Fed. R.App. P. 3, 4. The Court held that “where the address of the Court was not available, a written expression of dissatisfaction with the [Board’s] decision and a desire for judicial review delivered to [VA] for forwarding to the Court is efficacious if delivered to the [VA] within the time prescribed for filing a[n NOA].” Torres, 1 Vet.App. at 17. However, the Court also announced: “[S]inee December 18, 1989, ‘[t]o be timely filed, the [NOA] must be received by the Clerk’ of the Court within 120 days after the date on which notice of the [Board’s] decision was mailed. [U.S. Vet.App.] R. 4 [ (interim) ] (emphasis added).” Id.
Although Congress had designated the FRAP as the interim rules for the Court unless the Court established its own, Congress provided specifically that in the case of conflict between the FRAP and chapter 72 of title 38, U.S.Code, the statute would control. See Pub.L. No. 101-94, § 203 (designating FRAP as interim rules of Court unless otherwise provided for in statute). Thus, the Court held that section 4066 alone governed the filing of NOAs because the FRAP and section 4066 were inconsistent. Torres, 1 Vet.App. at 17. Nevertheless, the Court, in accepting the appellant’s NOA as timely filed, relied upon a U.S. Supreme Court decision and an advisory committee note, both of which interpreted the FRAP. Id.; see Houston v. Lack, 487 U.S. 266, 108 S.Ct. 2379, 101 L.Ed.2d 245 (1988) (noting FRAP’s general rule of actual receipt but holding that prisoner’s pro se effort to effectuate NOA outside traditional court facilities was sufficient to begin appeal process); Fed. R.App. P. 3 advisory committee’s note (“Literal compliance [with filing requirements is not required] in cases in which it cannot fairly be exacted.”).
In Torres, the Court relied upon its Interim General Rules and emphasized that the Court must actually receive an appellant’s NOA before it can be filed. On April 4, 1991, the Court issued Miscellaneous Order No. 4-91, entitled “In Re: *109 Rules of Practice and Procedure,” which set forth and adopted the Court’s Rules of Practice and Procedure, which became effective May 1,1991. The order stated that the Court had “benefitted from experience since December 18, 1989, under [the] Interim General Rules which followed, with appropriate modification, the framework of the [FRAP].” Misc. No. 4-91, 1Vet.App. XXIX (1991) (en banc order). The earliest version of Rule 4 of the Court’s Rules of Practice and Procedure provided:
To obtain review by the Court of a Board decision, a person adversely affected by that decision must file a[n NOA] within 120 days after the date on which notice of the decision was mailed by the Board to the last known address of the appellant and the appellant’s authorized representative, if any. The [NOA], including one filed by facsimile or other printed electronic transmission, must be received by the Clerk within this time limit.
U.S. Vet.App. R. 4 (1991) (amended 1994) (emphasis added).
The Court further interpreted section 7266 (formerly section 4066) in DiDonato v. Derwinski, 2 Vet.App. 42 (1991) (consolidated with Elegado v. Derwinski). In that case, appellant DiDonato’s NOA was mailed to the Court from Philadelphia, Pennsylvania, and the envelope was postmarked on the 117th day after the Board decision was mailed; it did not arrive at the Court until six days after the 120-day appeal period had elapsed. DiDonato, 2 Vet.App. at 43. Similarly, appellant Ele-gado’s NOA was mailed from the Philippines and postmarked on the 117th day after the mailing of the Board decision; it was not received by the Court until five days after the 120-day appeal period. Id. In deciding whether to accept the appellants’ NO As as timely, the Court stated that pursuant to section 7266(a), “an NOA must generally be actually received by, not mailed to, the Court within 120 days after the Board ... decision is mailed to an appellant.” Id. (citing Elsevier v. Derwinski, 1 Vet.App. 150, 152 (1991) (“[W]e regard it as an ineluctable conclusion that to be properly filed the NOA must be physically received by this Court”)). The word “generally” was inserted to account for the doctrines of equitable tolling and equitable estoppel; however, the Court determined that neither doctrine applied in that case. Id. at 43-44; see Irwin v. Dep’t of Veterans Affairs, 498 U.S. 89, 96, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990); Bailey, supra, (holding that equitable tolling of 120-day filing period may be warranted where VA misled or induced claimant into missing filing deadline). The Court held that neither appellant’s NOA was timely filed because their NOAs had not been received by the Court within the 120-day-appeal period. DiDonato, 2 Vet.App. at 44. Judge Steinberg concurred with the decision with “great reluctance” but urged the Court to accept a postmark rule to ease the inequities caused by delays of the U.S. and foreign postal services. Id. (Steinberg, J., concurring).
In response to DiDonato and its progeny, Congress amended section 4066 to establish not only filing of an NOA on the date of its actual receipt, but also recognizing the date of the postmark on the envelope containing the NOA as the date an NOA was received by the Court. See S.Rep. No. 103-232, at 5 (1994). The U.S. Senate Committee on Veterans’ Affairs stated in its Committee report that the Court’s “adoption of Rule 4 [requiring actual receipt of an NOA] was clearly proper and within the scope of the Court’s authority.” Id. at 6. The Committee, however, expressed its concern for veterans who lived far from Washington, D.C., particularly considering the periodic delay of the *110 U.S. Postal Service. Id. at 5-6. On October 25, 1993, the chairman of that committee asked the then-Chief Judge of the Court, Chief Judge Nebeker, for the Court’s views on adopting a postmark rule. Id. at 9. Chief Judge Nebeker expressed the Court’s disapproval of the proposed postmark rule. Id. at 9-10. The committee report also contained a July 1992 letter from Chief Judge Nebeker, which included a memorandum prepared by the legal counsel to the Clerk of the Court that expressed that the “Court’s physical delivery rule is preferable to the proposed postmark rule.” Id. at 11-17. In reaching this conclusion the memorandum discussed the other Article I courts and the FRAP and explained:
Congress provided the veteran with a four-month period to get his [or her NOA] to the Court. This 120-day period gives the veteran, at minimum, 60 more days to file an appeal with this Court than the average citizen has when appealing a federal district court decision. Moreover, the [Board], at the time it sends notice of its decision, is required to advise the veteran of his [or her] appellate rights and the Court’s mailing address. So the veteran simultaneously receives the [Board] decision and information about the Court, its location, and his [or her] right to judicial review.
The Court, in turn, through its rules, decisional law, and provision of information and materials to veterans, has established a bright-line standard for the timely filing of a[n NOA], It is clear and easy for pro se veterans to understand. Facsimile and other means of electronic filing are permitted. In addition, the Court has liberally construed Rule 3 concerning what constitutes a[n NOA] with a view toward ensuring timely filing. Thus, when a pro se veteran timely files papers which clearly evince his [or her] intent to appeal, the Court has found substantial compliance with the [NOA] requirements and exercised jurisdiction over the appeal.
A mail box rule has the potential to confuse the veteran to the extent it requires the use of certain types of mail like registered or certified mail with a return receipt requested. A good example of how perplexing a mail box [sic] rule can be is 26 U.S.C[] § 7502, the Internal Revenue Code provision which applies to the Tax Court. Although advocated by Senator Cranston, mail box rules, with their various requirements, are not easily understood or complied with. In the event of an untimely received [NOA] with an illegible postmark, for example, or one not sent through the U.S. Postal Service, the Court would be in the position of seeking affidavits and other evidence to resolve the jurisdictional question. Unless carefully and simply drafted, veterans can be frustrated by such a rule, and this Court can be stymied by it as it attempts to get beyond jurisdiction and proceed to the merits.
Again, what we have now is simple, explicit, and easily complied with. The veteran has ample time to get his [or her NOA] to the Court, and rules that he [or she] can understand and follow. Further, as a national federal appellate court, the Court ... has adopted a rule for filing appeals that is similar to those adopted by a majority of the federal circuit courts.
Id. at 16-17 (emphasis added). (It appears from the Chairman’s request and the substance of the memorandum that the abovementioned references to the “mailbox” rule are in fact intended to refer to the “postmark” rule.)
The resulting amendment to section 7266 did not reject the Court’s actual- *111 receipt rule; instead, the existing provisions of that statute were preserved and incorporated in paragraph (a)(1). See Veterans Benefits Improvements Act of 1994 (VBIA), Pub.L. No. 103-446, § 511(a), 108 Stat. 4645, 4670; see also Johnson v. First Nat’l Bank of Montevideo, 719 F.2d 270, 277 (8th Cir.1983) (stating that Congress acts with knowledge of existing law, and that “absent a clear manifestation of contrary intent, a newly-enacted or revised statute is presumed to be harmonious with existing law and its judicial construction”). The amendment also added the following provisions:
(2) An appellant shall file a[n NOA] under this section by delivering or mailing the notice to the Court.
(3) A[n NOA] shall be deemed to be received by the Court as follows:
(A) On the date of receipt by the Court, if the notice is delivered.
(B) On the date of the [U.S.] Postal Service postmark stamped on the cover in which the notice is posted, if the notice is properly addressed to the Court and is mailed.
Pub.L. No. 103-446, § 511(a). In addition to liberalizing the Court’s actual-receipt rule, the amendment restricted the Court’s ability to deem an NOA as received:
(4) For a notice of appeal mailed to the Court to be deemed to be received under paragraph (3)(B) on a particular date, the [U.S.] Postal Service postmark on the cover in which the notice is posted must be legible. The Court shall determine the legibility of any such postmark and the Court’s determination as to legibility shall be final and not subject to review by any other Court.
Id. This subsection of 7266 contemplates that an NOA, if mailed, must be received by the Court to allow for an inspection of the “cover in which the notice is posted.”
Thus, the plain meaning of the language in section 7266 explains that, regardless of the means chosen by an appellant to submit an NOA, the Court must actually receive that NOA. See 38 U.S.C. § 7266. Neither this amendment, as the sole exception to the actual receipt rule, nor its legislative history suggests that the Court must accept for filing an NOA under section 7266 that is never actually received by the Court. See, e.g., Cook v. Principi, 318 F.3d 1334, 1339 (Fed.Cir.2002) (“Applying the familiar canon of expressio uni-us est exclusio alterius ['the expression of one thing is the exclusion of another’], we conclude that Congress did not intend to allow exceptions to the rule of finality in addition to the two that it expressly created.”); BMW Mfg. Corp. v. United States, 241 F.3d 1357, 1361 (Fed.Cir.2001) (“It thus appears that Congress expressly provided for the exemption of certain merchandise from the [Harbor Maintenance Tax]. Where it did not so provide, it is reasonable to conclude that it did not so intend.”).
Recently, the U.S. Court of Appeals for the Federal Circuit (Federal Circuit) rejected an argument that the Court should treat as timely received an NOA that was deposited with “the Postal Service or a private courier service.” Mapu v. Nicholson, 397 F.3d 1375, 1378 (Fed.Cir.2005). The Federal Circuit discussed in general terms section 7266 and its legislative history and concluded that “it is clear that Congress required actual receipt of the [NOA] and specifically limited the exception created by the postmark rule to [NOAs] sent through the Postal Service.” Id. at 1381 (emphasis added). The Federal Circuit held that “for an appeal to be timely, the [Court] must receive the [NOA] within 120 days of the Board’s decision, or the notice must be deemed received within 120 days of the Board’s decision pursuant to the postmark rule of sections 7266(c) *112 and (d).” Id. at 1378. Although Mapu involved the mailing of an NOA through a commercial delivery service, and not with the U.S. Postal Service, its holding is equally applicable to the facts presented in these appeals. The Federal Circuit provided a general discussion of section 7266, announced its holding, and then applied the law to the specific facts in Mapu to find that the appellant had not satisfied the timeliness requirement of section 7266. Id. at 1378. The Federal Circuit did not limit its discussion of section 7266 to NO As delivered through commercial delivery services. Instead the Federal Circuit stated:
Congress added subsections (c) and (d) in an effort to liberalize the time requirement for filing a[n NOA], That legislation would have been unnecessary if sections 7266(a) and (b) already treated filing as complete when the [NOA] was deposited with the Postal Service or a private courier service. Given the structure of section 7266 and its legislative history, we decline to interpret subsections (a) and (b) in a way that would read subsections (c) and (d) out of the statute.
Id. (emphasis added).
The Mapu holding made even more clear that the date of filing of an NOA can only be (1) the date of actual delivery or (2) the date of a legible U.S. Postal Service postmark stamped on the received envelope containing the NOA. Thus, section 7266, its legislative history, and now the Federal Circuit’s decision in Mapu make clear that, absent actual receipt by the Court within the appeal period, only the postmark stamped on the NOA’s cover may be introduced as evidence of time of receipt of an NOA. See, e.g., Cook, supra. Indeed, applying the common law mailbox rule to section 7266 would do exactly what the Federal Circuit sought to avoid in Mapu — read subsections (c) and (d) out of that statute. That we will not do. There is no room for broad construction here, thus the Court must give effect to the clearly expressed intent of the legislative authority. See Weddel v. Sec’y of Health and Human Servs., 100 F.3d 929, 932 (Fed.Cir.1996). The generous spirit that suffuses the law generally, such as the rule espoused by the dissent, cannot override the clear meaning of section 7266.

2. The 26 U.S.C. § 7502 Tax Cases

In response to the parties’ argument that, under the common law mailbox rule, their NOAs should be presumed to have been delivered to and timely received by the Court, the Secretary would have us adopt the approach taken by the U.S. Courts of Appeals for the Second and Sixth Circuits in addressing 26 U.S.C. § 7502, a statute similar to section 7266. Section 7502 sets forth two statutory exceptions to the physical delivery rule for documents mailed to the Internal Revenue Service (IRS) and provides a rebuttable presumption of receipt to those taxpayers who can provide a timely postmark or registered or certified mail receipt. The Second Circuit held that the legislative history of section 7502 indicated that the statute only applied if the petition was actually delivered to the tax court. See Deutsch v. Comm’r, 599 F.2d 44, 46 (2nd Cir.1979). Similarly, the Sixth Circuit construed section 7502 as creating two separate exceptions to the requirement of physical delivery, and held that section 7502(a), “both by its terms and as revealed in the legislative history, applies only in cases where the document is actually received by the I.R.S. after the statutory period.” See Miller v. United States, 784 F.2d 728, 730 (6th Cir.1986). The U.S. Courts of Appeals for the Eighth, Ninth, and Tenth Circuits, however, have rejected the holdings of the Second and Sixth Cir *113 cuits. Those circuits have concluded that creation of a Statutory Postmark rule in section 7502 did not abrogate the applicability of the common law mailbox rule because there was no evidence of congressional intent to do so. See Anderson v. United States, 966 F.2d 487 (9th Cir.1992) (timeliness of tax return filed with IRS); Sorrentino v. IRS, 383 F.3d 1187 (10th Cir.2004) (same); Estate of Wood, supra (timeliness of estate’s special use election to IRS).
Section 7502, however, does not exclusively govern the filing of NOAs with the U.S. Tax Court or any other federal court; instead, it provides for the timely filing of “any return, claim, statement, or other document required to be filed, or any payment required to be made, within a prescribed period or on or before a prescribed date under authority of any provision of the internal revenue laws.” 26 U.S.C. § 7502(a)(1). Thus, it is no surprise that various federal circuit courts have arrived at differing conclusions when interpreting a statute that affects the filings of such a broad array of documents and payments. See Anderson, Sorrentino, Estate of Wood, Deutsch, and Miller, all supra. Indeed, in his statement to the Senate Committee on Veterans’ Affairs, Chief Judge Nebeker declared that 26 U.S.C. § 7502 was “perplexing.” See S.Rep. No. 103-232, at 16. Conversely, section 7266 addresses only NOAs filed with this Court and, as discussed below, provides clear instruction regarding the filing of NOAs that have been mailed to the Court.
Although it is conceivable that the plain language of 26 U.S.C. § 7502 does not require the actual receipt of any documents or payments mailed under the provisions of the internal revenue laws, the plain language of that statute also does not indicate that receipt by an agency of the actual postmark is necessary to deem as received a document, filing, or payment. See 26 U.S.C. § 7502 (stating that “the date of the United States postmark stamped on the cover in which such return, claim, statement, or other document, or payment, is mailed shall be deemed to be the date of delivery or the date of payment, as the case may be.”) Conversely, section 7266 retains its original language that requires the actual receipt of NOAs within the 120-day judicial appeal period. 38 U.S.C. § 7266(a). Moreover, section 7266 contains explicit instructions that (1) an NOA that is mailed through the U.S. Postal Service must contain a legible postmark and (2) a determination regarding the legibility of a postmark can only be made by this Court. 38 U.S.C. § 7266(d). Contrary to our dissenting colleagues’ beliefs, these explicit instructions manifest an implicit, if not explicit, intent by Congress to preclude the application of the common law mailbox rule to this statute. See generally Astoria Fed. Sav. & Loan Ass’n v. Solimino, 501 U.S. 104, 110-11, 111 S.Ct. 2166, 115 L.Ed.2d 96 (1991) (concluding that statute contravened common law after finding that application of common law would render statute useless); Isbrandtsen Co. v. Johnson, 343 U.S. 779, 788-89, 72 S.Ct. 1011, 96 L.Ed. 1294 (1952) (concluding that Congress implicitly limited deductions and set-offs to those listed in statute). Indeed, if the confines of sections 7266(c) and (d) do not allow us to divine the date of an illegible postmark that the Court actually receives, it is inconceivable that we should do so for an NOA that never arrives.
Finally, 26 U.S.C. § 7502 specifically excludes the application of its postmark rule to “the filing of a document in, or the making of a payment to, any court other than the Tax Court.” 26 U.S.C. § 7502(d)(1). This provision prevents a conflict between 26 U.S.C. § 7502 and 28 U.S.C. § 2107. Section 2107 of title 28, *114 U.S.Code, which governs timeliness of appeals for the U.S. courts of appeals, provides that “no appeal shall bring any judgment, order, or decree in an action, suit[,] or proceeding of a civil nature before a court of appeals for review unless notice of appeal is filed, within thirty days after the entry of such judgment, order[,] or decree.” 28 U.S.C. § 2107; see Fed. R.App. P. 3 and 4 (requiring NOA to be filed with district clerk within statutory filing period). Neither 28 U.S.C. § 2107 nor the FRAP contains a postmark rule; instead, many federal courts have held that an NOA must be received by the district court before it may be filed. See Houston, supra; see also Ward v. Atlantic Coast Line R.R., 265 F.2d 75, 80 (5th Cir.1959) (rev’d on other grounds) (“[W]e do not depart from the well-established principle that the jurisdictional requirement that notice be filed within thirty days is not met by deposit of notice in the mail in time for it to reach the clerk’s office in the usual course of mail delivery within the time allowed.”). Thus, although 26 U.S.C. § 7502 and section 7266 are alike in that they both contain a postmark rule, the language, purpose, and application of section 7266 is more analogous to the FRAP than to 26 U.S.C. § 7502.

S. Summary

As discussed above, applying the common law mailbox rule to the NOA requirements of section 7266 creates an inconsistency with the requirement that an NOA must be received or “deemed to be received” by the Court within the 120-day filing period. To avoid such inconsistency, we hold that subparagraphs (c) and (d) of section 7266 preclude the Court from applying the common law mailbox rule in order to deem timely an NOA that was either never received by the Court or was received late with an illegible postmark.
B. Statutory Postmark Rule and Extrinsic Evidence
The parties argue that extrinsic evidence can be used to show that a timely postmark indicating the date of mailing was affixed on the envelope containing the NOA and, therefore, that their NOAs should be considered timely under the statutory postmark rule, 38 U.S.C. § 7266(c)(2). As discussed above, section 7266 does permit, as an exception to the actual delivery rule, an NOA that was mailed through the U.S. Postal Service to be deemed delivered and received on the date of the postmark. See 38 U.S.C. § 7266(c). It does not, however, permit the use of extrinsic evidence to establish the date of the postmark. When amending section 7266, Congress considered the Court’s reluctance to accept extrinsic evidence to determine the date of mailing of an NOA and balanced these concerns against its desire to liberalize the rules for filing an NOA with the Court. As a result, the Senate Committee report stated that the proposed amendment to section 7266 would require that an NOA be deemed received by the Court on the date it is postmarked and that “[o]nly legible [U.S.] Postal Service postmarks would be sufficient” in making a deemed-received determination. S.Rep. No. 103-232 at 6; 140 Cong. Rec. 28,849 (1994) (Joint Explanatory Statement explaining that the postmark rule would not be broadly applicable, but applicable only to documents bearing “legible United States Postal Service postmarks”); see 140 Cong. Rec. at 28,840 (containing Senator Rockefeller’s summary of the major provisions of H.R. 4386).
Moreover, the plain language of section 7266 indicates that, regardless of the means chosen by an appellant to send to the Court an NOA, the Court must actually receive that NOA. Not only is the use of extrinsic evidence not provided for by stat *115 ute, this Court specifically cautioned against a rule that would require “seeking affidavits and other evidence to resolve the jurisdictional question.” S.Rep. No. 103-232, at 16-17. Indeed, if Congress had intended for the introduction of extrinsic evidence to establish the date of mailing, section 7266 would have reflected that intent. Cf. 26 U.S.C. 7502(c) (providing that a certified or registered mail receipt is prima facie evidence that a document that was mailed was delivered, and that the date of certification or registration is deemed to be the postmark date).
In Evans (Janet) v. Principi this Court found an NOA to be timely received under section 7266. Evans, 17 Vet.App. 41, 47-48 (2003). In Evans, the Court received the appellant’s NOA through the U.S. Postal Service five days after the 120-day judicial-appeal period. Id. at 46. After the Court received the appellant’s NOA, the Court inadvertently discarded the envelope in which it was mailed. Id. Although the envelope bearing a legible U.S. Postal Service postmark was no longer available, the Court held that under the circumstances “a postmark-stamped certified-mail receipt satisfies the statutory requirement of a ‘postmark stamped on the cover in which the notice is posted’ ” and that, therefore, the appellant’s NOA was received on the date of the postmark on that receipt which was the same date that was on the cover. Id. at 47-48 (quoting 38 U.S.C. § 7266(c)(2)). The Court relied on the fact that “the appellant ... proffered a postmark stamp on a certified-mail receipt that, according to well-established [U.S. Postal Service] mailing and postmarking practices, was part of the envelope containing the NOA at the time the NOA was posted.” Id. at 47. Thus, the Court did not consider extrinsic evidence, but rather, determined that, because the certified mail receipt was in fact part of the NOA cover, it therefore could, in accordance with section 7266(c), be considered to establish the date of receipt. No such evidence is present in these cases. A first class mail receipt is not the same type of receipt considered in Evans, nor certainly is an organization’s postal registry log.
Nothing in Evans, supra, can be construed as an intent by this Court to expand section 7266(c) to allow an appellant to introduce extrinsic evidence to establish the date of mailing as a substitute for the Court’s actual receipt of the NOA; rather, the Court’s holding in Evans reenforces the plain language of section 7266, its legislative history, and the Federal Circuit’s decision in Mapu, supra, that, absent actual delivery of the NOA to the Court, only the postmark on the envelope containing the NOA may be introduced as evidence to establish when the NOA was mailed. Again, as with application of the common law mailbox rule, to allow the introduction of extrinsic evidence to establish the date of mailing would do exactly what the Federal Circuit sought to avoid in Mapu— read subsections (c) and (d) out of the statute and defeat the purpose of the rules regarding timely mailing and filing.
C. Applicability of Equitable Tolling
Finally, Mr. Rios and Mr. Collins argue that, because they actively pursued their appeals by attempting to timely file their NOAs, the 120-day period should be equitably tolled. Under certain circumstances, equitable tolling of the judicial-appeal period may be appropriate, see Irwin v. Dep’t of Veterans Affairs, 498 U.S. 89, 96, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990); Bailey, supra (discussing equitable tolling in veterans benefits context); Evans (Billy) v. West, 12 Vet.App. 396, 399 (1999), but it is the appellant who has the obligation “to produce any evidence supporting his claim for equitable tolling,” McCreary v. Nichol *116 son, 19 Vet.App. 324, 332 (2005). In Irwin, the U.S. Supreme Court identified two situations not involving appeals to this Court where equitable tolling has been recognized-first, where the claimant has “actively pursued his judicial remedies by filing a defective pleading during the statutory period,” and second, “where the claimant has been induced or tricked” by the opposing party’s misconduct. Irwin, 498 U.S. at 96, 111 S.Ct. 453. Courts, however, “have generally been much less forgiving in receiving late filings where the [appellant] failed to exercise due diligence in preserving his legal rights.” Id.
In Bailey, supra, the Federal Circuit applying Irwin to NOAs to this Court held that equitable tolling applies to the 120-day judicial-appeal period in 38 U.S.C. § 7266(a). In Bailey, the appellant’s reliance on a VA employee’s statement that the appellant’s judicial appeal would be processed was a sufficient basis for equitable tolling of the judicial-appeal period when it was discovered that the VA employee failed to file the appeal with the Court. Bailey, 160 F.3d. at 1361. Applying the second prong of Irwin, the Federal Circuit held that, “[g]iven the particular relationship between veterans and the government,” equitable tolling could apply where, “[although there is no suggestion of misconduct,” VA’s conduct misled a claimant “into allowing the filing deadline to pass.” Id. at 1365; see Cintron, 13 Vet.App. at 257 (“cause and effect” relationship must exist, i.e., appellant relied to his own detriment on action that VA took, or should have taken but did not, and equitable tolling is not invoked if “the appellant’s reliance on VA was not the cause of the late filing”).
The Federal Circuit has also recognized that equitable tolling of the 120-day appeal period applied to an appellant who filed his NOA at a location other than the Court. See Brandenburg v. Principi, 371 F.3d 1362, 1364 (Fed.Cir.2004) (appellant misfiled the NOA with the Board rather than the Court); Santana-Venegas v. Principi, 314 F.3d 1293, 1296-98 (Fed.Cir.2002) (appellant misfiled NOA with RO rather than Court); Jaguay v. Principi, 304 F.3d 1276, 1289 (Fed.Cir.2002) (en banc) (appellant misfiled motion for Board reconsideration with RO rather than Board). Moreover, the Federal Circuit has held that ill health under certain circumstances may be a basis for tolling the judicial-appeal period. See Arbas v. Nicholson, 403 F.3d 1379, 1381-82 (Fed.Cir.2005) (remanding to determine whether appellant’s ill physical health prevented timely filing of NOA); Barrett v. Principi, 363 F.3d 1316, 1318-21 (Fed.Cir.2004) (remanding to determine whether appellant’s untimely filing of NOA was “direct result” of mental incapacitation). However, the Federal Circuit noted in Mapu that, in applying the doctrine of equitable tolling, “we have rejected the approach of looking to whether a particular case falls within the facts specifically identified in Irwin [, supra,] or one of our prior cases.” Mapu, 397 F.3d at 1380; see also Arbas, 403 F.3d at 1381.
Additionally, this Court recently held that extraordinary circumstances can warrant the equitable tolling of the 120-day judicial-appeal period. McCreary, 19 Vet.App. at 330. In McCreary, the following test was established to determine equitable tolling based on extraordinary circumstances:
First, the extraordinary circumstance must be beyond the appellant’s control. Second, the appellant must demonstrate that the untimely filing was a direct result of the extraordinary circumstances. Third, the appellant must exercise “due diligence” in preserving his appellate rights, meaning that a reasonably diligent appellant, under the same *117 circumstances, would not have filed his appeal within the 120-day judicial-appeal period.
Id. at 332 (citations omitted). The appellant, Mr. McCreary, asserted that the damage to his house by Hurricane Ivan caused him to misplace his VA paperwork. Id. at 326. The Court agreed that “a hurricane is a type of extraordinary circumstance that is beyond the appellant’s control,” but held that he had “failed to demonstrate that his untimely appeal was a direct result of Hurricane Ivan ... [or] that he exercised due diligence in pursuing his appeal.” Id. at 332. We reasoned, however, that the appellant had established only “that his untimely appeal was an indirect result of the hurricane — that is, in an effort to settle hurricane-related damage claims, he misplaced his paperwork to this appeal” and that “[a] person exercising due diligence would not have filed his NOA late simply because he ‘misplaced’ his paperwork.” Id. at 332-33.
The matters before us do not pass the first element of the extraordinary circumstance test-i.e., lost mail is not, on its face, an extraordinary circumstance beyond one’s control. Cf. Hanger v. Abbott, 73 U.S. (6 Wall.) 532, 542, 18 L.Ed. 939 (1867) (closing of courts in the South during the Civil War was an extraordinary circumstance warranting equitable tolling of the statute of limitations); Seattle Audubon Soc. v. Robertson, 931 F.2d 590, 595-96 (1991) (district court’s erroneous interpretation of the statute prevented the plaintiffs from raising certain claims, which had, by that point, become time barred, and the court therefore equitably tolled the statute of limitations); Alvarez-Machain v. United States, 107 F.3d 696, 701 (9th Cir.1996) (equitable tolling warranted when plaintiff had been abducted, incarcerated, and tried in a foreign country). Indeed, no evidence has been presented showing any cause for the failure of delivery to the Court of any mail containing the appellants’ NOAs. To be sure, the NOAs may have failed to reach their destination because of a U.S. Postal Service error. However, it is just as possible that the failure was due to matters within Mr. Rios’ and Mr. Collins’ control — such as failing to accurately address or stamp envelopes. In any event, whether or not there exists here an extraordinary circumstance beyond their control that prevented their NOAs from reaching the Court is not dispositive of the issue at hand. For the reasons that follow, we find that neither appellant has demonstrated that his untimely appeal was a direct result of an act beyond his control.
Nothing in Mr. Rios’ or Mr. Collins’ submissions satisfies the burden of establishing that their untimely received NOAs were a direct result of extraordinary circumstances. See McCreary, 19 Vet.App. at 332-33 (holding equitable tolling not warranted where appellant failed to produce evidence “directly attributing his untimely appeal to the hurricane”); Claiborne v. Nicholson, 19 Vet.App. 181, 186 (2005) (holding that equitable tolling is not appropriate because appellant failed to establish that his failure to file a timely NOA was a “direct result” of his mental illness). Although Mr. Collins offers evidence showing that he mailed something to “Washington, DC 20004” during the judicial-appeal period, and Mr. Rios submitted evidence and affidavits stating that his NOA was mailed to the Court during the judicial-appeal period, neither party offers evidence directly attributing his untimely appeal to an extraordinary circumstance beyond his control that prevented delivery. Absent such evidence, the Court will not equitably toll the 120-day judicial-appeal period. Although the Court is sympathetic to the circumstances, the evidence presented does not support either parties’ *118 claim for equitable tolling. See Reed v. Principi 17 Vet.App. 380, 383 (2003) (per curiam order) (rejecting appellant’s argument that anthrax scare delayed Court’s receipt of NOA because Court declined to speculate as to “how any anthrax-related mail-processing delay ... may have affected when the appellant’s NOA may have been delivered to the Court”); see also McCreary, supra. Furthermore, there is nothing otherwise in this appeal to suggest that tolling of the 120-day appeal period would be appropriate, see Bailey, supra.
IV. CONCLUSION
Based upon the foregoing analysis, the Court holds that, under section 7266, Mr. Rios’ and Mr. Collins’ NOAs are untimely and thus, their appeals are dismissed.
LANCE, Judge, filed a concurring opinion.
KASOLD, Judge, filed an opinion concurring in part and dissenting in part, in which HAGEL, Judge, joined.

. In Rosenthal v. Walker, the U.S. Supreme Court stated that, under the common law mailbox rule, “if a letter properly directed is proved to have been either put into the post office or delivered to the postman, it is presumed, from the known course of business in the post office department, that it reached its destination at the regular time, and was received by the person to whom it was addressed.” 111 U.S. 185, 193, 4 S.Ct. 382, 28 L.Ed. 395 (1884).