# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 06-2699

EDYTHE F. ROBINSON, APPELLANT,

v.

ERIC K. SHINSEKI,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Argued October 21, 2008                                    Decided March 31, 2009)

*Ronald L. Smith*, of Washington, D.C., for the appellant.

*Doris Johnson Hines*, with whom *Paul J. Hutter*, General Counsel; *R. Randall Campbell*, Assistant General Counsel; *Brian B. Rippel*, Deputy Assistant General Counsel, were on the brief, all of Washington, D.C., for the appellee.

Before KASOLD, DAVIS, and SCHOELEN, *Judges*.

DAVIS, *Judge*:  Edythe F. Robinson, surviving spouse of U.S. Army veteran Gerald Robinson,  appeals through counsel from a May 22, 2006, Board of Veterans' Appeals (Board) decision that denied entitlement to dependency and indemnity compensation (DIC) benefits.  This Court has jurisdiction to review the Board's decision pursuant to 38 U.S.C. §§ 7252(a) and 7266(a).  *See Frankel v. Derwinski*, 1 Vet.App. 23, 25-26 (1990).  For the following reasons, the Court will affirm the Board's May 2006 decision.

## I.  BACKGROUND

The veteran served on active duty in the U.S. Army from 1956 until his retirement in 1978. He had been in continuous receipt of 100% disability compensation from his discharge until his

death in May 1985. In July 1985, Mrs. Robinson filed an application for DIC benefits. In a rating decision dated September 4, 1985, a VA rating office (RO) noted that "basic eligibility [for DIC benefits] is established." Record (R.) at 61.

Because of the circumstances of the veteran's death, however, the RO denied Mrs. Robinson's claim on the grounds that she "intentionally and wrongfully caused the death " of her husband. R. at 420; *see also* 38 C.F.R. § 3.11 (2008). The veteran died of gunshot wounds to the head and chest. The death certificate notes that he received the wounds in the bedroom of his home, and states that the death was a homicide, the veteran having been "[s]hot by another person." R. at 30. While Mrs. Robinson has consistently maintained her innocence, she nevertheless was initially prosecuted and convicted of second degree murder. Although that conviction was overturned, *see Robinson v. Florida*, 535 So. 2d 610 (Fla. Dist. Ct. App. 1988), Mrs. Robinson remained in custody for a total of 588 days. She thereafter entered a plea of nolo contendere with protestation of innocence in a negotiated plea agreement. In a statement to the court during sentencing proceedings, Mrs. Robinson made the following remarks:

> I am maintaining my innocence and pleading nolo contendere . . . for the following reasons: My family's funds are exhausted. My mother is almost eighty years old and is suffering emotionally from the circumstances of my incarceration. My children, while they supported me firmly in my fight[,] want me home.

R. at 118-19. The Florida Circuit Court found her guilty of the lesser included offense of manslaughter and sentenced her to time served.

As the Board notes, Mrs. Robinson received a "Certificate of Restoration of Civil Rights" in August 1990, and in September 2002 the Florida Governor granted Mrs. Robinson a pardon without the right to own, possess, or use firearms. A June 2005 regional counsel opinion analyzed the effect of this pardon and concluded that it likely conferred "no tangible benefit" on the appellant. R. at 540.

The regional counsel recommended that the adjudicator undertake further evidentiary development and then determine the credibility of the conflicting evidence to make a finding of fact whether Mrs. Robinson forfeited her claim to DIC benefits by intentionally and wrongfully causing the veteran's death. The regional counsel mentioned several pieces of evidence for consideration. Forensic evidence admitted at trial indicated that the veteran was wounded on the left side of the

head indicating a right-handed shooter, while Mrs. Robinson is left handed. Evidence admitted at trial established that blood on the murder weapon was that of neither the veteran nor Mrs. Robinson. At a hearing, Mrs. Robinson also asserted that a test of gunshot residue on her hands established that she had not fired the murder weapon. *See* R. at 537. The record also reflects that Mrs. Robinson passed a polygraph test in which she denied culpability in her husband's murder. *See* R. at 116. The regional counsel opinion went on to suggest that VA might wish to supplement the evidence of record by obtaining copies of documents containing the forensic evidence referred to by Mrs. Robinson and "then analyz[ing] 'both sides' of the case to determine which is more credible." R. at 139.

In the decision here on appeal, however, the Board grounded its denial of DIC benefits solely on the manslaughter conviction. The Board noted that the facts of this case differ from those of *Lofton v. West*, 198 F.3d 846 (Fed. Cir. 1999), in that Mrs. Robinson consistently maintained her innocence in this case and received a pardon from the Governor. The Board found, however, that Mrs. Robinson's conviction for manslaughter was essentially a guilty verdict that established that she intentionally and wrongfully caused the veteran's death. The Board noted that a general intent to cause the death of a victim is a required element of manslaughter and that the evidence did not reflect "a legal justification or excuse or that she was insane at the time of her conduct or that she was otherwise not responsible." R. at 11. The Board noted preliminarily that a plea of nolo contendere cannot be used as an admission of the facts charged in a subsequent civil suit. *See Vinson v. Florida*, 345 So. 2d 711 (Fla. 1977). The Board reasoned, however, that it is the judgment of the court–not the plea–that constitutes a determination of guilt. *See Lott v. United States*, 367 U.S. 421, 426-27 (1961). "Thus," the Board asserted, "while the Board may not use the appellant's plea to the lesser charge of manslaughter, it may use the subsequent conviction." R. at 7.

After analyzing Florida law on the matter, the Board further noted that by its own terms, the Florida Governor's pardon "'does not . . . require other Boards or Agencies to grant favorable consideration in matters within their respective jurisdiction,'" and being less than a full unconditional pardon, did not expunge the manslaughter conviction. R. at 9-10. The Board concluded that "based solely on her conviction of manslaughter, she would be barred by VA regulation from receiving DIC." R. at 8.

3

## II.  POSITIONS OF THE PARTIES

### A.  The Appellant

Mrs. Robinson argues that 38 C.F.R. § 3.11 is unlawful because the Secretary exceeded the rulemaking authority granted to him by Congress.  The regulation cites no authority except 38 U.S.C. § 501(a).  This statutory provision begins by stating that "[t]he Secretary has authority to prescribe *all rules and regulations which are necessary and appropriate* to carry out the laws administered by the Department and are consistent with those laws, including . . . ."  38 U.S.C. § 501(a) (emphasis added).  The text of this section follows with four exemplary categories of matters as to which the Secretary may make regulations.  *See* 38 U.S.C. § 501(a)(1-4).[1]

Mrs. Robinson reasons that because this statutory list contains only procedural matters, the statute authorizes the Secretary to adopt only procedural rules and by negative inference does not authorize substantive rulemaking.  She cites *Rios v. Nicholson*, 20 Vet.App. 104, 111 (2006), applying the well-known canon of statutory construction "expressio unius est exclusio alterius."[2]  Mrs. Robinson further notes that other sections of title 38, such as section 1315, explicitly grant substantive rulemaking power to the Secretary.  *See* 38 U.S.C. § 1315(b)(1) (providing that, in DIC claims where there is only one parent, "the monthly rate . . . paid to such parent shall be $163, as increased from time to time . . . and reduced by an amount . . . *determined in accordance with regulations which the Secretary shall prescribe*" (emphasis added).  She argues that if Congress had intended to convey general substantive rulemaking powers in section 501(a), it would have done so

---

[1]Section 501(a) provides:

> The Secretary has authority to prescribe all rules and regulations which are necessary or appropriate to carry out the laws administered by the Department and are consistent with those laws, including–
>
> (1) regulations with respect to the nature and extent of proof and evidence and the method of taking and furnishing them in order to establish the right to benefits under such laws;
> (2) the forms of application by claimants under such laws;
> (3) the methods of making investigations and medical examinations; and
> (4) the manner and form of adjudications and awards.

[2]"A canon of construction holding that to express or include one thing implies the exclusion of the other, or of the alternative."  BLACK'S LAW DICTIONARY 602 (7th ed. 1990).

expressly, as it did in provisions of title 38 such as section 1315.

Mrs. Robinson attempts to distinguish *Lofton*, *supra*, in which the U.S. Court of Appeals for the Federal Circuit (Federal Circuit) held that 38 C.F.R. § 3.11 is an "entirely reasonable gap-filling measure," because the question presented in that case was whether the regulation was a reasonable interpretation of 38 U.S.C. § 1310, the statute that confers DIC benefits on a veteran's survivors. The *Lofton* Court did not consider whether the Secretary exceeded his power under 38 U.S.C. § 501(a), Mrs. Robinson reasons, and therefore the case does not control the disposition of that question in this case. Further, Mrs. Robinson asserts that decisions of the U.S. Supreme Court subsequent to the Federal Circuit's holding in *Lofton* provide superior guidance on the question of the validity of § 3.11. Citing *Barnhardt v. Peabody Coal Co.*, 537 U.S. 149, 168 (2003) and *Chevron U.S.A. Inc. v. Echazabal*, 536 U.S. 73, 81 (2002), she asserts that "[t]he procedural nature of the associated list of examples in § 501(a) raises a legal inference that the statute does not authorize the Secretary to adopt substantive rules" and that "Congress must be held to have made a deliberate choice in withholding from the Secretary the power to make substantive rules when it enacted § 501(a)." Appellant's Brief (Br.) at 19-20. She asserts that 38 C.F.R. § 3.11 is a substantive regulation because it imposes a disqualifying factor on claims for DIC and establishes a category of surviving spouses that are not entitled to benefits under 38 U.S.C. § 1318. Appellant's Br. at 15. Mrs. Robinson concludes that the Court should invalidate § 3.11 because it was adopted in excess of the statutory power granted by Congress.

In the alternative, Mrs. Robinson argues that the Board decision is unlawful because the Board failed to discharge its statutory duty to consider the entire record and all the evidence. She argues that the Board should have considered the reasons for her plea of nolo contendere, the fact that she continually asserted her innocence, the forensic evidence, the polygraph examination, and "other exculpatory evidence." Appellant's Br. at 8.

### B. The Secretary

The Secretary argues that the challenge to the validity of the regulation is refuted by *Lofton*, *supra*. In *Lofton*, the Federal Circuit considered another challenge to the validity of this regulation. The *Lofton* Court opined as follows:

The DVA may promulgate regulations that are "necessary or appropriate to carry out

5

the laws administered by the Department and are consistent with those laws." 38 U.S.C. § 501(a). That statute, of course, does not authorize the DVA to promulgate regulations that are contrary to congressional enactments. A regulation does not contradict the statutory scheme, however, simply because it addresses an issue on which the scheme is silent. As long as the regulation constitutes a reasonable "gap-filling" measure, the DVA may promulgate such a regulation without violating its statutory mandate. *See Gilpin v. West*, 155 F.3d 1353 (Fed. Cir. 1998) *cert. denied,* 526 U.S. 1144, 143 L. Ed. 2d 1031, 119 S. Ct. 2019 (1999).

The regulation at issue in this case, 38 C.F.R. § 3.11, is an entirely reasonable gap-filling measure. Although the statute is silent as to the issue addressed by the regulation, it is highly unlikely that Congress would have intended to confer DIC benefits on persons whose claims to those benefits result from their own acts of intentional and wrongful homicide. To the contrary, Congress legislates against a common law background, and section 3.11 simply codifies a long-standing common law principle known as the "slayer's rule," which bars wrongdoers from obtaining insurance and other benefits as a direct consequence of their wrongful acts. In light of the universality of the common law rule and the fact that Congress did not foreclose its application, the DVA acted reasonably in promulgating a regulation codifying the slayer's rule and applying it to DIC benefits.

198 F.3d at 850 (citations omitted). In the Secretary's view, the Federal Circuit's reasoning in *Lofton* is entirely applicable in this case.

The Secretary agrees with the appellant, however, that "the Board's reliance upon appellant's conviction alone as the determinative factor regarding whether she wrongfully and intentionally caused the veteran's death under these circumstances is not sustainable and the Board's decision should be remanded." Secretary's Br. at 9. The Secretary further asks the Court to direct that any subsequent adjudication of the case conform to the analysis set forth in General Counsel and regional counsel opinions received in this case.

### III. ANALYSIS

#### A. Validity of Regulation

The Court agrees with the Secretary that 38 U.S.C. § 501(a) authorizes him to promulgate 38 C.F.R. § 3.11, and that this regulation has been held to be "an entirely reasonable 'gap-filling' measure." *Lofton*, 198 F.3d at 850. Section 501(c) is merely an instance where rulemaking authority is granted with discretion to the Secretary to regulate where necessary to carry out VA's mission,

6

whereas other statutory provisions cited by the appellant, such as 38 U.S.C. § 1315, are instances of authority with a specific mandate to promulgate regulations. The examples given in § 501(a) do not restrict the general language stating that the Secretary may prescribe "all regulations which are necessary and appropriate." 38 C.F.R. § 501(a) (2008).

Moreover, consideration of the full statutory context of 38 U.S.C. § 501 refutes the appellant's asserted dichotomy between substantive and procedural regulations. "'[W]e [must] not be guided by a single sentence or member of a sentence, but look to the provisions of the whole law and to its object and policy.'" *Meeks v. West*, 216 F.3d 1363, 1367 (Fed. Cir. 2000) (citing *Massachusetts v. Morash*, 490 U.S. 107, 115 (1989)); *Talley v. Derwinski*, 2 Vet.App. 282, 286 (1992) (each part or section of a statute should be construed in connection with every other part or section so as to produce a harmonious whole); *see also Reno v. Koray*, 515 U.S. 50, 56-57 (1995) (construing statutory language in context of entire statutory scheme).

The statutory scheme set forth in 38 U.S.C. § 501 establishes that Congress most certainly did contemplate that the Secretary would institute substantive rules under the authority of this section. In subsection (d), the statute requires that 5 U.S.C. § 553 appy to all "matters relating to . . . benefits under a law administered by the Secretary." 38 U.S.C. § 501(d). The provisions of 5 U.S.C. § 553, in turn, set forth the required notice and comment procedure for rulemaking.[3] Significantly, that statute states that the notice and comment procedure does not apply to "interpretive rules, general statements of policy, or rules of agency organization, procedure or practice." 5 U.S.C. § 553(b)(A). Therefore, it necessarily applies to substantive rulemaking. Subparagraph (d) of section 501 would be superfluous if Mrs. Robinson were correct that 38 U.S.C. § 501(a) excluded substantive rulemaking. Furthermore, subsection (c) of section 501 incorporates the publication requirements of 5 U.S.C. § 552(a)(1)(D), which pertain to "substantive rules of general applicability adopted as authorized by law," and to "statements of general policy or interpretation of general applicability formulated and adopted by the agency." *See* 38 U.S.C. § 501(c); 5 U.S.C. § 552(a)(1)(D). Neither of these categories encompasses procedural rules, and the incorporation of the publication requirements for substantive rules in 5 U.S.C. § 552(a)(1)(D) is further indication that

---

[3]In fact, 38 C.F.R. § 3.11 went through the notice and comment procedure. *See* 44 Fed. Reg. 22,718.

Congress contemplated that the Agency would issue such rules under section 501.

That the language of 38 U.S.C. § 1318 includes the mandatory "shall" does not, without more, compel the result that benefits be paid to a putative beneficiary who caused the veteran's death. As the *Lofton* Court noted, Congress is presumed to legislate against a common law background. Therefore, 38 C.F.R. § 3.11 may be regarded as a regulation that implements the common law "slayer's rule." As the U.S. Supreme Court recognized in *Barnhardt, supra*, cited by the appellant, Federal courts do not readily infer an absurd result unless it is clear that Congress considered that outcome and deliberately chose it. *Id.* at 160, 168. For the foregoing reasons, the appellant's challenge to the validity of 38 C.F.R. § 3.11 fails. The Court agrees that this regulation is an eminently appropriate gap-filling regulation within the rulemaking authority granted by Congress.

B. Sufficiency of Manslaughter Conviction

As stated earlier, both Mrs. Robinson and the Secretary contend that the Board should have conducted a broader factfinding exercise, considering all exculpatory evidence in addition to the manslaughter conviction. The Court should not mechanically accept the agreement of the parties that there is error in a Board decision, however, and, in this instance, we do not agree with the parties that the Board erred. *See Lukosevicz v. Dep't of Labor*, 888 F.2d 1001, 1003 n.2 (3rd Cir. 1989) (stating with regard to joint motion to vacate the administrative Board decision in that case that "it is inappropriate to take such action without examining the underlying legal issue"); *see also* 38 U.S.C. § 7104 (Board renders final decision for the Secretary).

The Federal Circuit stated in *Lofton* that "[the] conviction [for manslaughter] established as a matter of law that [the appellant] intentionally and wrongfully killed [the veteran]." 198 F.3d at 851. In applying *Lofton* to this matter, the Board noted that there are differences between this case and *Lofton*. The widow in *Lofton* admitted that she killed her husband; the Board in that case rejected her assertions that the killing was justified. In this case, Mrs. Robinson maintained her innocence, and "consistently contended that an unknown third party invaded their home and killed her husband." R. at 6. Also, in this case, Mrs. Robinson received a pardon, unlike the widow in *Lofton*.

The Board, however, was not persuaded that these differences necessitated a different result. As noted above, the Board concluded that the pardon granted to Mrs. Robinson in this case was not

an unconditional pardon and it did not expunge the manslaughter conviction. The Board concluded that the appellant's conviction for manslaughter was essentially a guilty verdict that established that she intentionally and wrongfully caused the veteran's death. The Board correctly noted that a plea of nolo contendere cannot be used as an admission of the underlying facts in a subsequent civil suit, but that it is the judgment of the court–not the plea of the defendant–that constitutes a determination of guilt. R. at 6-7 (citing *Vinson* and *Lott*, both *supra*).

Moreover, under Florida law the appellant's conviction for manslaughter necessarily rested on a finding of culpable negligence, which involves a conscious following of

> a course of conduct showing reckless disregard of human life, or of the safety of persons exposed to its dangerous effects, or such an entire want of care as to raise a presumption of a conscious indifference to consequences, or which shows wantonness or recklessness, or a grossly careless disregard of the safety and welfare of the public, or such an indifference to the rights of others as is equivalent to an intentional violation of such rights.

*Ellison v. State of Florida,* 547 So. 2d 1003, 1006 (Fla. Dist. Ct. App. 1989) (quoting Standard Criminal Jury Instruction on Manslaughter (October 1985)); *see also* FLA. STAT. § 782.07(1) (2008). Significantly, Florida law also requires that before the court accepts a nolo contendere plea, it must be satisfied that the plea is voluntary and that a factual basis for the plea exists. *See Maselli v. State*, 446 So. 2d 1079, 1081 (Fla. 1984) (noting that "before rendering judgment the court must hold a hearing and be satisfied that the plea is voluntary and that a factual basis exists for accepting it"). Otherwise stated, a manslaughter conviction in Florida, even one based on a nolo contendere plea, necessitates a finding that the manslaughter was intentional and wrongful. *Id*.

Accordingly, the Court holds that the appellant's conviction for manslaughter resulting from a duly supported plea of nolo contendere is sufficient, as a matter of law, to support the finding by the Board that Mrs. Robinson intentionally and wrongfully caused the veteran's death. Therefore, the Court affirms the Board's determination that Mrs. Robinson is not entitled to DIC benefits.

## IV. CONCLUSION

Based on the foregoing reasoning, the Court AFFIRMS the Board's May 22, 2006, decision.

9